Matthew **ELLYSON,** Appellant–
Defendant,

v.

**STATE of Indiana,** Appellee–Plaintiff.

No. 27A04–9204–CR–120.

Court of Appeals of Indiana,
Fourth District.

Dec. 3, 1992.

Brent Westerfeld, Indianapolis, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Julie Zandstra Frazee, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant Matthew Ellyson (husband) appeals his conviction by the Grant Superior Court II of Burglary, as a Class B felony,[1] asserting a failure of proof thereof, and denial of effective assistance of counsel as to his convictions for Rape, as a Class B felony,[2] and Battery, as a Class D felony.[3]

Reversed.

Restated, the issues raised by this appeal are:

(1) whether the evidence was sufficient to prove husband broke and entered the "property of another", as required by the burglary statute, when he owned a possessory interest in the premises in common with his spouse, and

(2) whether he was denied effective assistance of counsel at trial where counsel did not

(a) procure the attendance at trial of relevancy and authentication witnesses for two rape kits the state had prepared in anticipation of trial, but did not offer as evidence, which husband sought to offer as exhibits in his defense, and

(b) lay the predicate required for the admission of wife's prior inconsistent statements which would have put wife's credibility at issue.

Husband and Angela Jones Ellyson (wife) were married when he was 19 and she 16 years of age. After their marriage, they lived together in a three bedroom house in Marion. Their marriage soon began to deteriorate, and husband voluntarily

1. IND.CODE 35–43–2–1.
2. IC 35–42–4–1.
3. IC 35–42–2–1.

moved out of the house. However, he later claimed he had the right to have sexual intercourse with her because she was his wife. On several occasions, husband attempted to re-enter the premises for that purpose.

Wife filed suit for dissolution of marriage. Later, a restraining order was issued. Its contents, however, were never offered as evidence. The facts establishing the offenses were related by wife at trial. On the evening the restraining order was issued, husband kicked in the door. (R. 119). The next day, wife discovered some of husband's belonging had been returned to the house. The day after that, husband attempted to enter the premises while wife, her new boyfriend, and another were in the house. They chased husband, but he escaped.

Later that same evening after wife's friends had left, husband entered the premises, struck and choked wife, removed her panties then inserted a curling iron into her vagina. Afterward, he raped her for five or six minutes even though he only had a partial erection and did not ejaculate. When he finished, wife kicked husband in the gonads, ran for the bathroom, and locked the door. Husband pounded on the bathroom door demanding entry but wife refused. He then left the premises.

Wife immediately burned the panties in a wood stove, bathed, douched, and washed the curling iron "to get rid of everything, every ounce that he was there ... I didn't want anybody to know anything that happened." (R. 143).

Later at her new boyfriend's insistence, she reported the incident to the police. (R. 150). The state's investigator prepared two rape kits in anticipation of trial. One contained known hair samples from both husband and wife for comparison with suspect pubic hairs gathered at the scene. The other contained pubic hair combings, blood samples, and vaginal smears taken from wife at a hospital on the evening in question. The suspect pubic hair sample taken from the scene was negative as to husband. (R. 269). The vaginal smears, etc., taken from wife were negative as to

sexual intercourse that evening. (R. 267). The state did not offer these kits as evidence at trial.

Defendant's attempts to introduce the rape kits while the state's investigator was testifying were unsuccessful. Also, his attempts to introduce wife's prior inconsistent statements to impeach her credibility failed.

Wife was the state's prosecuting witness. Her testimony contains the only direct evidence regarding the events upon which husband's conviction was based.

From his conviction on all three counts, husband appeals.

 When presented with a claim of insufficient evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. Rather, we consider only the evidence and reasonable inferences most favorable to the State. If there is substantial evidence of probative value from which a reasonable trier of fact could find the existence of each element of the offense charged beyond a reasonable doubt, we will affirm the conviction. *Bartruff v. State* (1990), Ind., 553 N.E.2d 485, 486; *Meredith v. State* (1987), Ind., 503 N.E.2d 880. We view the evidence in the light most favorable to the State. *Loyd v. State* (1980), 272 Ind. 404, 398 N.E.2d 1260, 1264, *reh. denied, cert. denied,* (1980), 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

IC 35–43–2–1, the burglary statute, provides:

A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony. However, the offense is a Class B felony ... if the building ... is a dwelling....

Husband first argues the evidence is insufficient to support his conviction for burglary as a Class B felony because the state failed to prove he had either no possessory interest or a possessory interest inferior to his wife's in the house where this incident occurred. Thus, the evidence is insufficient to sustain the judgment below as to the burglary charge, he claims. To the contrary, the state argues when husband

moved out, wife alone controlled access to the home, i.e. she had sole possession thereof. Because the witnesses at trial referred to the dwelling as wife's home, postulates the state, there is substantial evidence wife had the sole possessory interest therein. Thus, husband's unauthorized entry constituted burglary, it contends. *State v. Dively* (1982), Ind., 431 N.E.2d 540, 543; *Musick v. State* (1972), 258 Ind. 295, 280 N.E.2d 602, 603. We agree with the state.

IC 35–41–1–23 reads, in part:

. . . . .

(b) Property is that "of another person" if the other person has a possessory or proprietary interest in it, even if an accused person also has an interest in that property.

Thus, the burglary statute's requirement the dwelling be that "of another person" is satisfied if the evidence demonstrates the entry was unauthorized, even though the accused may have had a right to possession of the house co-equal with his wife at the time of the breaking. *Dively*, at 542.

Husband finally asserts his trial counsel was incompetent because he failed to:

(a) produce the witnesses necessary to authenticate and show the relevancy of two rape kits prepared by the investigating officer in anticipation of trial, but not offered by the state as evidence during the trial, and

(b) lay a foundation for wife's prior inconsistent statements which tended to impeach her.

The state responds to the failure to call witnesses claim by saying:

Although defense counsel's failure to successfully introduce this evidence may have been deficient performance, [husband] has not shown how he was prejudiced by the deficiency.

Brief of Appellee at 10. It then argues wife testified she bathed, douched, and changed her clothing after the incident. Thus, the laboratory results showing no semen, etc., are not surprising, and admission of the lab tests would not have tended to change the result of the trial. However, it makes no argument as to trial counsel's failure to call the relevance and authentication witnesses necessary to the admission and analysis of the two rape kits prepared by the State. (R. 269). As to the failure to lay the predicate for impeaching statements, the State only claims the record on appeal does not reveal what the impeaching statements might have been. Thus, husband has not met his burden of proving error, *citing Battles v. State* (1985), Ind., 486 N.E.2d 535, 539.

When a court on appeal considers the issue of ineffective assistance of either trial or appellate counsel, its scrutiny of the attorney's performance is highly deferential. As was said in *Best v. State* (1991), Ind., 566 N.E.2d 1027:

The standard for counsel's performance is that of reasonably effective assistance. To prevail on his claim, [appellant] must show that his attorney's performance fell below an objective standard of reasonableness under prevailing norms. He also must prove that his attorney's failure to function was so prejudicial as to deprive him of a fair trial. A fair trial is denied when the conviction or sentence results from a breakdown that renders the result unreliable. *Siglar v. State* (1989), Ind., 541 N.E.2d 944.

*Best*, 566 N.E.2d at 1031. Justice O'Connor has succinctly stated the criteria by which to determine when an accused has been accorded a fair trial. In the seminal case of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, she said:

The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment, including the Counsel Clause:

"In all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense."

Thus, a fair trial is one in which evidence *subject to adversarial testing* is presented to an impartial tribunal for resolution of issues defined in advance of the pro-

ceeding. The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the *"ample opportunity to meet the case of the prosecution"* to which they are entitled. (Citing cases) ...

The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results. An accused is entitled to be assisted by an attorney, whether retained or appointed, *who plays the role necessary to ensure that the trial is fair.*

For that reason, the Court has recognized that "the right to counsel is the right to *the effective assistance of counsel.*" (Citing cases). (Emphasis supplied).

Thus, the standard to be applied when reviewing an incompetency of counsel question is two-fold: First, the defendant must show counsel's performance fell below an objective standard of reasonableness under prevailing professional norms. Next, he must demonstrate counsel's substandard performance was so prejudicial he was deprived of a fair trial. *Schior v. State* (1989), Ind., 533 N.E.2d 1201, 1204, *cert. denied* 493 U.S. 910, 110 S.Ct. 268, 107 L.Ed.2d 218 (*citing Strickland, supra*).

 The reviewing court presumes counsel has discharged his duty fully, and strong and convincing evidence is required to rebut this presumption. *Clark v. State* (1990), Ind., 561 N.E.2d 759, 762; *Burris v. State* (1990), Ind., 558 N.E.2d 1067, 1072, *reh. denied.* Isolated poor strategy, inexperience, or bad tactics do not imply ineffectiveness. *Burr v. State* (1986), Ind., 492 N.E.2d 306, 308.

 A fair trial is denied only when the conviction results from a breakdown in the adversarial process which renders the trial result unreliable. *Siglar v. State* (1989), Ind., 541 N.E.2d 944, 946. To show that the trial result is unreliable, a defendant must show that, but for counsel's unprofessional errors, the result probably would have been different. *Best, supra; Miller v. State* (1989), Ind., 541 N.E.2d 260, 262.

 Were trial counsel's failures merely the result of poor strategy or bad tactics? Clearly not. His decision to introduce the two rape kits tending to show (a) wife did not have sexual intercourse that evening, and (b) some third party's, not husband's, pubic hair was found at the scene, was certainly a valid strategic decision. Further, wife's testimony was the only direct evidence husband was the perpetrator of the crimes charged. Thus, prior inconsistent statements showing she sought revenge against her husband would tend to demonstrate to the factfinder her testimony was unreliable. Without doubt, counsel's failure to accomplish those goals fell below professional norms.

 The inquiry does not end there, however. The final question is whether husband was deprived of a trial the result of which was reliable due to counsel's deficient performance? *Strickland, supra; Miller,* 541 N.E.2d at 262. Viewing the trial as a whole, we believe he was.

Under our studied reading of state and federal precedent on this subject, we note legal gaffes regarding matters peripheral to trial, such as failure to file motions for discharge, suppress evidence, and the like, are consistently held to be unlikely to affect the outcome of a trial, especially when other evidence offered therein overwhelmingly points to the defendant's guilt. Such was not the case here. As noted before, wife's testimony alone as prosecuting witness was the only direct evidence husband broke into the dwelling, then beat, choked, and raped her that evening.

While the uncorroborated testimony of a rape victim is sufficient evidence to sustain a rape conviction on appeal, *Peters v. State* (1989), Ind., 542 N.E.2d 1340, 1342, such evidence, standing essentially alone before the factfinder, cannot reasonably be categorized as "overwhelming", we believe. Thus, any evidence tending to demonstrate (a) wife had not had sexual intercourse, and/or (b) husband had not been in wife's

bed that evening readily might have been of special significance for the trier of fact as it weighed the evidence.

 We now turn our attention to wife's prior inconsistent statements.[4] The credibility of a witness may be tested, i.e., he or she may be impeached by proof of prior inconsistent statements or acts. *Davis v. State* (1983), Ind., 456 N.E.2d 405, 410; *Finney v. State* (1979), 179 Ind.App. 316, 385 N.E.2d 477, 481, cf. IC 34–1–15–1. Once a proper foundation has been laid, extrinsic proof of prior inconsistent statements is admissible for impeachment purposes. *Morris v. State* (1982), Ind.App., 433 N.E.2d 74, 78; *Aikins v. State* (1971), 256 Ind. 671, 271 N.E.2d 418, 420.

A proper foundation for the impeachment of a witness requires the witness be advised of the circumstances under which contradictory or inconsistent statements were made. This is accomplished by calling the witness's attention to the time when, the place where, and the person or persons to whom the contradictory or inconsistent statements were alleged to have been made. *Smith v. State* (1981), 275 Ind. 45, 414 N.E.2d 299, 300; *Anderson v. State* (1977), 267 Ind. 289, 370 N.E.2d 318, 322, *cert. denied* 434 U.S. 1079, 98 S.Ct. 1273, 55 L.Ed.2d 786.

Trial counsel here did not lay the predicate with wife for introduction of the supposedly inconsistent statements he attempted to place into evidence through witnesses Bragg and Parks, i.e. he did not ask her whether she had, in fact, made them on the dates and at the times alleged. The trial court quite properly ruled on each offering of such statements they were inadmissible because no foundation had been laid. Impeachment of a prosecuting witness is a common and valuable tool of criminal defense counsel. It was not used here because counsel did not know how to do it as he should have.

Impeachment is the process of attacking the credibility of a witness who has given testimony. In Indiana, there are six primary ways in which a witness's credibility may be attacked: (1) through a showing the witness has made statements inconsistent with his testimony; (2) through a showing the witness is biased or prejudiced for or against a party; (3) through a general or specific attack upon the witness's character; (4) through a showing of a defect in the witness's capacity to observe and recall the events about which testimony is given; (5) contradiction of the witness's testimony by other evidence; and (6) by statute, a showing, for impeachment purposes, of the witness's lack of religious belief. 12 Miller, *Indiana Evidence* § 607.101 (1984).

Because the only direct evidence of husband's guilt was contained in wife's testimony, wife's impeachment became an important matter at trial. Had her credibility been called into question, the result reasonably could have been altered. Husband was not required to prove himself innocent below, his task was but to raise a reasonable doubt as to his guilt. Within the confines of this case, wife's prior inconsistent statements might well have placed the requisite doubt in the factfinder's mind, the result being a judgment of not guilty. Thus, husband was denied his Sixth Amendment right to the effective assistance of counsel during the trial below.

Reversed and remanded for a new trial on all counts consistent with this opinion.

CHEZEM, J., concurs in result.

BAKER, J., concurs.

---

**4.** Trial counsel also made no offers to prove what witnesses Delvin Bragg's and Lora Parks's testimony would have been regarding wife's statements to them on the occasions to which they testified, cf. (R. 295–297, 303–305). In context, Bragg attempted to testify as to a conversation about the rape charge then pending against husband that he, wife, and another had one evening while drinking in the back seat of an automobile. (R. 295–296). Parks, husband's mother, attempted to testify about specific threats wife made against husband after wife and husband had separated "to make him pay one way or another" for failing to turn over to her a portion of a tax refund check. (R. 308).