Ricardo B. FULLER, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 79A04–0703–CR–147.

Court of Appeals of Indiana.

Oct. 23, 2007.

Transfer Denied Dec. 20, 2007.

Bruce W. Graham, Trueblood & Graham, P.C., Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Ricardo Fuller appeals his convictions and sentence for Class A felony burglary, Class B felony criminal confinement, Class C felony stalking, and Class D felony domestic battery. We affirm in part and reverse in part.

### Issues

The restated issues before us today are:

I. whether the State's amendment of the charging information to add the stalking charge was untimely;

II. whether there is sufficient evidence to support the burglary conviction;

III. whether there is sufficient evidence to support the conviction for criminal confinement as a Class B felony; and

IV. whether Fuller's thirty-nine-year sentence is inappropriate.[1]

---

1. Fuller's sentence actually was sixty-nine years, due to an habitual offender enhance-

## Facts

The evidence most favorable to the convictions is that Fuller married L.F. in April 2005. They began experiencing marital problems in September of that year, and L.F. moved in with her mother. By November, Fuller and L.F. had reconciled and decided to rent a house in Lafayette. Only L.F. signed the lease, but Fuller and L.F. both were listed as tenants.

On January 10, 2006, L.F. and Fuller had an argument and Fuller struck L.F. L.F. went to her mother's home and called police from there. Fuller also went to the home and entered it without permission. Police officers arrived and warned Fuller that he was trespassing, but they could not substantiate that L.F. had been battered. They then escorted Fuller back to the house where he had been living with L.F. He packed some belongings and told police that he was going to Kokomo to stay with a "girlfriend." Tr. p. 161.

On February 7, 2006, L.F. met with her landlord and had Fuller removed from the lease. It was the landlord's practice to change the locks on the door anytime there was a change in tenants. On February 10, 2006, L.F. arrived home from work at approximately 10:30 p.m. Also there was L.F.'s roommate, Brandy Loman. After she arrived home, Fuller called L.F., who told Fuller that she had to go to bed and not to call her anymore. Fuller called again, and at that same time there was a knock on the front door, which was locked. Loman looked out the window and saw that it was Fuller. L.F. and Loman refused to open the door, and Fuller said that he would break the door open if they did not let him in. L.F. attempted to call 911, but her phone was no longer working. Fuller then smashed the glass on the door,

reached in and unlocked it, and entered the house.

L.F. escaped through the back door of the house, but Fuller caught up with her outside and began battering her. L.F. remembers Fuller punching her in the head and kicking her in the stomach, and she lost consciousness during the beating. L.F. was taken to the hospital, where she was found to have sustained a fracture to the medial wall of the right eye socket, or the part of the eye socket next to the nose. She also had an ethmoid fracture, at the base of the cranium, as well as numerous abrasions and a six-inch laceration above her right eyebrow.

L.F. obtained a protective order against Fuller on February 21, 2006. Nevertheless, Fuller repeatedly continued calling L.F. and leaving threatening messages for her.

On March 23, 2006, the State charged Fuller with Class A felony burglary, Class C felony battery resulting in serious bodily injury, Class D felony domestic battery, and Class A misdemeanor domestic battery in connection with the February 10–11, 2006 incident. The State also charged Fuller with two counts of Class A misdemeanor invasion of privacy and one count of Class D felony invasion of privacy in connection with violations of the February 21, 2006 protective order.

On March 26, 2006, L.F. got home from work and found Fuller waiting for her in the dining room. Fuller accused L.F. of being unfaithful and punched her in the face at least ten times. He then made L.F. get trash bags in which to put her roommate Loman's belongings. Fuller had both L.F.'s home phone and cell phone

ment. He does not challenge either the habitual offender finding or the thirty-year enhancement of his sentence.

so she could not call for help. While L.F. was attempting to put Loman's things in the trash bags, Fuller continued accusing her of cheating and continued punching her, and also kicked her in the stomach and in the head. He threw a beer can at L.F., which lacerated one of her earlobes. He pushed L.F. down the stairs. He threatened to kill L.F. if she admitted to cheating, and to kill her if she did not admit it because he would know she was lying. Then, after hitting L.F. a few more times, Fuller told her to take a shower. She did, and afterwards Fuller allowed her to go to sleep.

Despite having visible marks on her face, L.F. persuaded Fuller to let her go to work the next morning. She was found to have a "blowout" comminuted fracture of her right eye socket. Tr. p. 195. A nurse testified that "blowout" meant there were several fractures of the socket, and comminuted meant the fractures did not fit back together perfectly because some of the bone had been pulverized. L.F. also had multiple bruises on her face, arms, legs, and ribs, and had sharp pain in her right hip.

On March 28, 2006, the State filed additional charges against Fuller, under the pre-existing cause number, for Class B felony criminal confinement, Class A misdemeanor domestic battery, and Class A misdemeanor invasion of privacy in connection with the March 26, 2006 incident. At the initial hearing for all of the charges, the trial court assigned an omnibus date of May 19, 2006.

On July 5, 2006, the State filed an information alleging that Fuller was an habitual offender. On August 23, 2006, the State filed two additional charges of Class C felony stalking, under the same cause number as all of the other charges, without first obtaining leave of the trial court. On October 10, 2006, Fuller filed an objection to the filing of the stalking charges. The trial court refused to dismiss the stalking charges, although it found them to be untimely filed.

After the first phase of the trial held on December 12–13, 2006, a jury found Fuller guilty of Class A felony burglary, Class B felony criminal confinement, Class C felony battery, two counts of Class C felony stalking, Class A misdemeanor domestic battery, and Class A misdemeanor invasion of privacy. Fuller waived a jury trial for the second phase of the trial, after which the trial court found Fuller guilty of Class D felony domestic battery because of a prior domestic battery conviction, and found that Fuller was an habitual offender. At sentencing on January 11, 2007, the trial court did not impose sentences for every charge for which Fuller had been found guilty. It imposed a sentence of twenty years for Class A felony burglary, fifteen years for Class B felony criminal confinement, and four years for Class C felony stalking, all to run consecutively, and three years for Class D felony domestic battery, to run concurrent with the other sentences, for a term of thirty-nine years. Four years were suspended. The trial court also enhanced the sentence by thirty years because of the habitual offender finding. Fuller now appeals.

## Analysis

### I. Timeliness of Stalking Charges

■ Fuller first contends the trial court erred in not dismissing the two stalking charges, which were filed well beyond the omnibus date. Amendments to a charging information are governed by Indiana Code Section 35-34-1-5. *See Fajardo v. State*, 859 N.E.2d 1201, 1203 (Ind.2007). Our supreme court recently clarified that the version of this statute in effect at the time of Fuller's trial categorically prohibited "any amendment as to matters of sub-

stance unless made thirty days before the omnibus date for felonies and fifteen days before the omnibus date for misdemeanors." *See id.* at 1207 (citing Ind.Code § 35–34–1–5(b) (2006)). As for immaterial defects or matters of form, the statute permitted amendment of an information at any time before, during, or after trial, so long as such amendment did not prejudice the substantial rights of the defendant. *See id.* at 1207 n. 11 (citing I.C. § 35–34–1–5(c)).[2]

Our supreme court explained:

[A]n amendment is one of form, not substance, if both (a) a defense under the original information would be equally available after the amendment, and (b) the accused's evidence would apply equally to the information in either form. And an amendment is one of substance only if it is essential to making a valid charge of the crime.

*Id.* at 1207. The court went on to hold in that case that adding a charge of Class A felony child molesting to an information that previously had alleged only one count of Class C felony child molesting clearly was an amendment of substance that had to be, but was not, made thirty days before the omnibus date. *See id.* at 1207–08.

The State does not attempt to argue that the addition of two charges of Class C felony stalking was not an amendment of substance that, under *Fajardo's* clear holding, had to have been made thirty days before the omnibus date of May 19, 2006. Instead, it urges that in order to preserve a claim of error on this issue, Fuller was required not only to object to the amendment, but also had to move for a continuance after the new charges were added to the information. We disagree.

The State relies primarily upon *Wright v. State*, 690 N.E.2d 1098 (Ind.1997). There, the defendant originally was charged as a principal with committing murder and criminal confinement. Later, and apparently after the omnibus date had passed,[3] the State amended the information to clarify that it was alleging the defendant acted as an accomplice, not a principal. The defendant objected to the amendment but did not move for a continuance after the trial court overruled his objection. On appeal, our supreme court said, without analyzing whether the amendment was one of form or substance:

Had defendant seriously believed that the amendment of the charges prejudiced him in any way, he should have requested a continuance to further evaluate and prepare his case in light of the

---

**2.** After *Fajardo* was decided, the General Assembly amended Section 35–34–1–5 so that a charging information may be amended at any time prior to trial as to either form *or* substance, so long as such amendment does not prejudice the substantial rights of the defendant. See P.L. 178–2007 § 1 (emergency eff. May 8, 2007). We address the version of the statute in effect at the time of Fuller's trial and *Fajardo's* interpretation of it. *See Laney v. State*, 868 N.E.2d 561, 565 n. 1 (Ind.Ct.App. 2007), *trans. denied.* To the extent the State apparently urges us to reconsider *Fajardo* in light of the 2007 amendment to the statute, we cannot overrule our supreme court's holding. *See Meeks v. State*, 759 N.E.2d 1126, 1128 (Ind.Ct.App.2001), *trans. denied.* We

also note that amendments of informations to include an habitual offender allegation are governed by Indiana Code Section 35–34–1–5(e), which generally requires such an allegation to be filed no later than ten days after the omnibus date but permits amendments at any time before the commencement of trial if the State shows good cause for the delay. The habitual offender allegation here was filed more than ten days after the omnibus date, but the trial court found good cause for the delay and Fuller does not challenge that determination on appeal.

**3.** The *Wright* opinion does not state when the omnibus date was.

amendments. Having failed to request a continuance after the court granted the motion to amend, defendant has waived this issue on appeal.

*Wright,* 690 N.E.2d at 1104. The court went on to hold that in any event, the amendment to change the theory of the case from principal to accessory liability was permissible because it did not prejudice the defendant's substantial rights.[4] *Wright,* 690 N.E.2d at 1104.

We conclude that *Fajardo* implicitly overruled *Wright,* at least to the extent it could be read as requiring a defendant to move for a continuance, in addition to objecting, before being permitted to challenge an untimely substantive amendment on appeal.[5] *Wright* was focused exclusively upon whether the defendant was prejudiced by the amendment to the charging information. The continuance requirement of *Wright* was part of that focus; i.e., even if an untimely amendment could have prejudiced a defendant if a trial went ahead as planned, the defendant was required to try to avoid such prejudice by seeking a continuance of his or her trial.

By contrast, *Fajardo* made it clear that alleged prejudice to the defendant (or lack thereof) simply is not part of the equation when determining the permissibility of an amendment of substance under the previous version of Indiana Code Section 35–34–1–5. The *Fajardo* opinion criticized a number of earlier decisions that did not focus "upon whether the challenged amendment was one of form or substance, but ... employed components of the sub-

stance/form test ... to assess whether the defendant's substantial rights were prejudiced, *which is not a controlling factor for permitting substantive amendments." Fajardo,* 859 N.E.2d at 1206 (emphasis added). Although the *Fajardo* opinion did not specifically cite *Wright,* we believe it is precisely the type of case our supreme court intended to overrule, at least as to its analysis if not its result, because it failed to examine whether the amendment at issue was one of form or substance.

Furthermore, although the *Fajardo* opinion specifically notes that the defendant had objected to the State's untimely amendment of the charging information, it makes no mention of whether the defendant moved for a continuance after the objection was overruled. It nowhere states that the defendant was required to move for a continuance. Instead, the court simply concluded, "The [substantive] amendment was not sought by the State ... until seven days after the omnibus date, and thus failed to comply with the statute. The defendant's objection should have been sustained and the amendment denied." *Id.* at 1208. The defendant was not required to demonstrate that he was prejudiced by the amendment. In light of (1) *Fajardo's* clarification that the validity of an amendment of substance under the former statute turns solely upon the timing of the amendment, not prejudice to the defendant, (2) its criticism of cases very similar to *Wright,* and (3) its failure to mention whether the defendant in the case had moved for a continuance, we conclude that Fuller was not required to move for a

---

4. We recently held, applying *Fajardo's* strict insistence on differentiating between amendments of substance versus amendments of form, that changing the theory of the prosecution from principal to accomplice liability is an amendment of form, not substance. *See Laney,* 868 N.E.2d at 565–66.

5. The State also cites *Absher v. State,* 866 N.E.2d 350, 356 (Ind.Ct.App.2007), where this court held the defendant had waived his argument regarding the untimely amendment of the charging information because he failed to object to the amendment before the trial court. Fuller did object to the amendment; *Absher* does not apply here.

continuance in order to preserve his objection to the State's late amendment of the charging information to include the two stalking charges.

■ Fuller contends that this late amendment requires reversal of all of his convictions and remand for a new trial on all counts, minus the stalking charges. We disagree. In *Fajardo*, the court simply vacated the conviction for the untimely charge, Class A felony child molesting, but affirmed the conviction on the original charge, Class C felony child molesting. *Id.* at 1208–09. Thus, here we simply direct that Fuller's conviction and sentence for Class C felony stalking be vacated. The remainder of his convictions and sentence are unaffected by the untimely amendment.

## II. Sufficiency of the Evidence— Burglary

■ Next, Fuller challenges the sufficiency of the evidence supporting his burglary conviction, which was based on his entry on February 10–11, 2006, into the home he had shared with L.F. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind.2007). "It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction." *Id.* We must affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.*

Indiana Code Section 35–43–2–1 provides, "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary...." [6] Fuller specifically disputes the sufficiency of the evidence that he broke into the structure of "another person," because he previously had lived in the residence with L.F. and, until four days before the break in, had been listed as a tenant of the residence.

However, "Property is that 'of another person' if the other person has a possessory or proprietary interest in it, even if an accused person also has an interest in that property." Ind.Code § 35–41–1–23(b). Under this definition, we have held that the burglary statute's requirement that the property entered be that "of another person" is satisfied if the evidence demonstrates the entry was unauthorized, even if the accused may have had a right to possession of the house co-equal with an estranged spouse at the time of the breaking. *Ellyson v. State*, 603 N.E.2d 1369, 1373 (Ind.Ct.App.1992); *cf. also State v. Dively*, 431 N.E.2d 540, 543 (Ind.Ct.App. 1982) (stating "circumstances may exist in particular cases which, as a matter of fact, will prevent an entry by a spouse into the other spouse's separate property from amounting to a burglary because the act may be the result of express or implied permission.").

We have little hesitation in concluding that Fuller's entry into the house on February 10–11, 2006, was unauthorized. At that time, Fuller had not lived at the house for several weeks. When he knocked on the door, L.F. and Loman refused to allow him in. Fuller threatened to break the door in if they did not open it. The door was locked, and it appears that Fuller no longer had a key to the door that worked, because he was forced to smash in the

---

**6.** The base offense is a Class C felony but is elevated to a Class A felony if bodily injury or serious bodily injury to anyone other than the defendant. Ind.Code § 35–43–2–1(2). Fuller does not dispute that L.F. sustained at least bodily injury on February 10–11, 2006.

glass portion of the door and reach inside to unlock it. Fuller's arguments that there was no protective order in place against him at that time, that the parties had not begun divorcing proceedings, or that he was unaware L.F. had had him removed from the lease are unavailing. When Fuller knocked on the door, L.F. made it clear that he was not allowed inside, but he still forced his way inside. This is enough to constitute a breaking and entry into another person's property. *See Ellyson*, 603 N.E.2d at 1373. There is sufficient evidence to support Fuller's burglary conviction.

### III. Sufficiency of the Evidence—Class B Felony Criminal Confinement

■ Fuller also contends there is insufficient evidence to support his conviction for Class B felony criminal confinement based on the events of March 26, 2006. The base offense of criminal confinement is a Class D felony, but it may be elevated to a Class B felony if it "results in serious bodily injury to a person other than the confining or removing person." I.C. § 35–42–3–3(b)(2)(B). Fuller argues there is insufficient evidence that he inflicted serious bodily injury on L.F. when he confined her on March 26, 2006.

■ "Serious bodily injury" is defined as "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." I.C. § 35–41–1–25. Appellate courts exercise "considerable deference on a matter as judgmental as whether a bodily injury was 'serious.'" *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind.2004). Such deference is not complete. *See id.* (holding that evidence victim suffered lacerated lip, knee abrasion, and broken pinky finger, and was not given any pre-

scription pain medication, did not establish serious bodily injury). There is, however, no bright line between what is "bodily injury" and what is "serious bodily injury." *Id.*

The evidence with respect to the March 26, 2006 assault upon L.F. was that Fuller repeatedly struck her in the head or face with closed fists, kicked her in the head and torso, and pushed her down a flight of stairs. At the hospital, L.F. was found to have suffered a "blowout" comminuted fracture of her right eye socket, meaning there were several fractures and some of them did not fit back together because some of the bone had been pulverized. Tr. p. 195. L.F. also had multiple bruises on her face, arms, legs, and ribs, and complained of sharp pain in her right hip. We also know that L.F. was given Toradol at the hospital as a pain medication, rather than a non-prescription medication such as acetaminophen or ibuprofen.

Fuller essentially concedes that the fracture of L.F.'s right eye socket could be enough to establish serious bodily injury. However, he notes that L.F. was found to have suffered a fractured right eye socket after the February 10–11 incident, and claims the State failed to establish that the fracture in the same location six weeks later was inflicted during the March 26, 2006 incident, not the earlier one. We conclude the State presented sufficient evidence that this was a new injury inflicted on March 26, 2006. The medical records describe the fracture at that time as an acute injury, and also happen to note an old fracture of her left eye socket. A nurse testified at trial that acute "means current, just happened." *Id.* Additionally, the medical records following the February 10–11 assault do not describe the right eye socket fracture as being a multiple "blowout" and/or comminuted fracture. Those records only mention a fracture in one specific location of the eye socket.

Thus, there is evidence that her right eye socket was much more severely damaged following the March 26, 2006 incident than it was after the February 10–11, 2006 incident.

We conclude that this evidence regarding the right eye socket, especially in conjunction with the evidence of the extent of Fuller's assault and the use of prescription pain medication, is enough to clear the *Davis* hurdle and to establish the existence of serious bodily injury. There is sufficient evidence to support Fuller's conviction for Class B felony criminal confinement.

### IV.  Sentence

■ Finally, we address Fuller's claim that his sentence of thirty-nine years is inappropriate. Because we have directed that Fuller's conviction and sentence for Class C felony stalking be vacated, his sentence already will be reduced to thirty-five years—twenty years for Class A felony burglary and fifteen years for Class B felony criminal confinement to be served consecutively and three years for Class D felony domestic battery to be served concurrently.

■ Our supreme court recently provided an outline for the respective roles of trial and appellate courts under the 2005 amendments to Indiana's sentencing statutes. *See Anglemyer v. State*, 868 N.E.2d 482, 491 (Ind.2007). First, a trial court must issue a sentencing statement that includes "reasonably detailed reasons or circumstances for imposing a particular sentence." *Id.* Second, the reasons or omission of reasons given for choosing a sentence are reviewable on appeal for an abuse of discretion. *Id.* Third, the weight given to those reasons, i.e. to particular aggravators or mitigators, is not subject to appellate review. *Id.* Fourth, the merits of a particular sentence are reviewable on appeal for appropriateness under Indiana Appellate Rule 7(B). *Id.*

The trial court here issued a sentencing statement finding no mitigating circumstances and two aggravating circumstances, Fuller's criminal history and his lack of remorse. Fuller challenges neither the adequacy of the sentencing statement nor the trial court's findings or non-findings of aggravators and mitigators. We thus proceed to consider whether his sentence is appropriate under Rule 7(B) in light of the nature of the offenses and Fuller's character.

■ Regarding Fuller's character, the presentence report reveals that he has had nearly constant involvement with the criminal justice systems of Florida and Indiana since 1990. Some of his convictions are for misdemeanor traffic offenses, such as for operating while intoxicated and driving with a suspended license. He has a variety of other misdemeanor convictions, including for resisting law enforcement, public intoxication, false reporting, invasion of privacy, trespass, and three for battery (including two domestic battery convictions). He has felony convictions from Florida for aggravated stalking, burglary, grand theft, and driving as an habitual traffic offender, and in Indiana for resisting law enforcement. He has violated probation on six prior occasions. "The significance of a criminal history in assessing a defendant's character and an appropriate sentence varies based on the gravity, nature, and number of prior offenses in relation to the current offense." *Rutherford v. State*, 866 N.E.2d 867, 874 (Ind.Ct.App. 2007). Even excluding the fact that two of the felony convictions had to support the habitual offender finding and one of the domestic battery convictions had to support the Class D felony domestic battery conviction, Fuller's criminal history is extensive, and reveals his violent tendencies and complete disregard for the law. It clearly supports a sentence for the Class B felony criminal confinement five years above the advisory of ten years.

Regarding the nature of the offenses, on two separate occasions within the span of six weeks, Fuller entered his estranged wife's house and proceeded to batter her viciously. The second incident occurred after L.F. had obtained a protective order against Fuller, again demonstrating his complete disregard for the law. We reject Fuller's attempt to minimize the seriousness of these offenses. The fact that Fuller committed them on two clearly separate occasions warrants the imposition of consecutive sentences for the February 10–11, 2006 burglary and the March 26, 2006 criminal confinement.

We note that had the trial court imposed maximum, consecutive sentences for these offenses, Fuller could have been sentenced to a term of seventy-three years, not including the thirty-year habitual offender enhancement that he does not challenge.[7] He was sentenced to less than half that time. In light of the overwhelming evidence of Fuller's poor character as revealed by his criminal history and the egregiousness of these offenses committed on two separate occasions, we find a thirty-five year sentence to be appropriate.

### Conclusion

Fuller's conviction and sentence for Class C felony stalking must be reversed because of the untimeliness of the addition of the stalking charges. There is sufficient evidence to support his convictions for Class A felony burglary and Class B felony criminal confinement. Finally, we conclude his sentence is not inappropriate.

Affirmed in part and reversed in part.

KIRSCH, J., and ROBB, J., concur.

---

7. Fifty years for the Class A felony, twenty years for the Class B felony, and three years for the Class D felony. *See* I.C. §§ 35–50–2–4, –5, –7(a).