# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73703-1-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| DERRICK ALLEN KOLANOWSKI, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: January 30, 2017 |
| | ) | |

Cox, J. — Derrick Kolanowski appeals his conviction for rape and unlawful imprisonment. Because he fails in his burden to overcome the presumption that his trial counsel was effective, we reject his ineffective assistance of counsel claim. We affirm.

On the night of February 7, 2014, Kolanowski arranged through his acquaintance Tim Powell to buy marijuana from a woman named S.W.-H. Powell and S.W.-H were roommates at the time. Powell told Kolanowski to stop by the trailer where S.W.-H. and Powell lived for the sale.

Later that night, a man arrived at the trailer around 10:30 or 11:00 p.m. S.W.-H. was alone at the time. She let him in and sold him the marijuana. The man did not leave despite her repeated requests for him to do so. Instead, he sat down at a table and smoked the marijuana. He also offered to pay S.W.-H. for sex. S.W.-H. repeatedly refused.

When the man finally arose to leave, he claimed to have trouble opening the door. When S.W.-H. went to assist him, the man placed her in a chokehold and punched her when she resisted. S.W.-H. continued to struggle with the assailant. Nevertheless, he sexually assaulted her and repeated his sexual assaults overnight until sometime the next morning. He left the scene around 8:00 or 8:30 a.m. the next morning.

S.W.-H. went to the hospital that morning, where police responded to her report of the sexual assaults. Police investigated the matter, interviewing S.W.-H and others. Police also gathered evidence from the crime scene.

Based on this investigation, police arrested Kolanowski at his workplace. At the time of his arrest, he was wearing a black sweatshirt. Police seized this sweatshirt as evidence, and a crime lab tested it for DNA.

The State charged Kolanowski with rape in the second degree and unlawful imprisonment of S.W.-H., allegedly occurring on or about February 8, 2014. His primary defense at trial was identity, claiming he was elsewhere at the time of the crimes. He also maintained that the blood on his sweatshirt at the time of his arrest was due to injury at work. A jury convicted him as charged.

Kolanowski appeals.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Kolanowski argues that he was denied effective assistance of trial counsel on two grounds. First, he argues his counsel failed to authenticate extrinsic impeachment evidence. Second, he argues his counsel failed to object to

inadmissible DNA "match" testimony. We hold that he fails to meet his burden to show counsel was ineffective in either respect.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to not only counsel, but to counsel whose assistance is effective.[1] The Washington Constitution provides an analogous right in article 1, section 33.[2] The United States Supreme Court explained in Strickland v. Washington that the benchmark of this right is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[3]

The defendant demonstrates the ineffectiveness of his counsel by meeting a two-part burden. He must first show that counsel's performance was unreasonably ineffective and, second, that such ineffectiveness prejudiced the results of his case.[4] Because he must meet both elements, the court need not address both if either is found wanting.[5]

The defendant shows that his counsel's representation "fell below an objective standard of reasonableness" based on the relevant circumstances and the "prevailing professional norms."[6] So long as the representation was

---

[1] Strickland v. Washington, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[2] State v. Benn, 120 Wn.2d 631, 663, 845 P.2d 289 (1993).

[3] 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[4] Id. at 687.

[5] Id. at 697.

[6] Id. at 688.

reasonable, this court should neither "interfere with the constitutionally protected independence of counsel [nor] restrict the wide latitude counsel must have in making tactical decisions."[7] Thus, this court conducts this inquiry "from counsel's perspective at the time" of trial and must strongly presume that counsel's conduct was reasonably effective.[8] The defendant can overcome that presumption by showing "there is no conceivable legitimate tactic explaining counsel's performance."[9] But the defendant must show this or any other deficiency based on the record established in the proceedings below.[10]

The defendant seeking to overturn his conviction must also show a "reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."[11] The defendant need not show that he would more likely have been acquitted than not absent the relevant error.[12] He must also show that that probability was "substantial, not just conceivable."[13] Again, he must do so based on the record below.[14]

---

[7] Id. at 689.

[8] Id.; see also State v. McFarland, 127 Wn.2d 322, 337, 899 P.2d 1251 (1995).

[9] State v. Carson, 184 Wn.2d 207, 218, 357 P.3d 1064 (2015).

[10] McFarland, 127 Wn.2d at 337.

[11] Strickland, 466 U.S. at 695.

[12] Id. at 693.

[13] Harrington v. Richter, 562 U.S. 86, 112, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

[14] McFarland, 127 Wn.2d at 337.

Determining whether counsel provided ineffective assistance is a mixed question of law and fact.[15] We review de novo whether a defendant received ineffective assistance of counsel.[16]

*Authenticating Extrinsic Impeachment Evidence*

Kolanowski first argues that his trial counsel's failure to secure a witness to authenticate a screenshot of a Facebook post allegedly made at the time of the rape was deficient performance. Specifically, he claims this evidence would have impeached S.W.-H.'s credibility by showing she had access to her phone and was not within her attacker's grasp at the time of the sexual assaults. We hold that this record fails to support the claim that counsel's performance was deficient.

The issue is whether counsel's failure to secure a witness to authenticate the time stamp on a March 2015 screenshot of a Facebook page was objectively unreasonable. In deciding this question, we are confined to the record on appeal in ascertaining the relevant facts.

This record shows that S.W.-H testified at trial that she was unable to contact anyone outside her trailer during the sexual assaults of February 8, 2014. That was because she was not close to her phone. She also testified that she could not escape from the assailant because he held her down.

During pretrial motions, the State sought to exclude Facebook records that lacked foundation. Counsel for Kolanowski sought to admit a March 2015

---

[15] State v. Jones, 183 Wn.2d 327, 338, 352 P.3d 776 (2015).

[16] Id.; State v. Cross, 156 Wn.2d 580, 605, 132 P.3d 80 (2006).

screenshot of what purported to be a 2:49 a.m., February 8, 2014 record. The record was purported to be a "liking [by S.W.-H of] a photograph of—posted by [her]—[a] friend of a football player in a tutu." The relevance of this post was to undercut the credibility of S.W.-H's testimony that she did not have access to her phone at 2:49 a.m. on February 8, 2014.

The focus of the arguments centered on the foundation required to prove that the 2:49 a.m. time shown on the March 2015 screenshot was the same time S.W.-H's device liked the posting by her friend on February 8, 2014.

The parties appeared to acknowledge that Facebook has a privacy policy disallowing access to its records other than by duly authorized law enforcement officers. A Facebook website sets forth the protocols for this option. Thus, it appears that counsel, as opposed to law enforcement officers, could not pursue this option.

The discussion moved to another option, a judicial subpoena issued by the trial court. But it appears that Facebook, headquartered in California, could ignore or delay responding to a subpoena issued by a Washington trial court.

Counsel established that he timely sought the cooperation of the State in pursuing information from Facebook before trial. But this was without success because the law enforcement officer tasked with serving the subpoena never did so. The trial court then ordered the State to put counsel in contact with someone who knew what needed to be done to obtain information from Facebook. Nothing in this record shows what took place in response to this directive. We decline to speculate about what took place after the court's directive to the State.

We also decline to speculate what a successful inquiry of Facebook would have shown on the authentication issue of timing.

Near the end of the presentation of witnesses, counsel indicated he would explore the possibility of having his investigator testify about her experience with Facebook posts. However, no such testimony followed. We must presume counsel decided that such testimony would not be helpful.

During closing argument, neither side addressed this Facebook issue. Rather, counsel for Kolanowski focused on other challenges to the victim's credibility.

It is clear from our review of this record on appeal that counsel sought admission of the March 2015 screenshot to undermine S.W.-H's testimony about her inability to obtain access to her phone because her assailant held her down during the sexual assaults of February 8, 2014. If she "liked" a post at 2:49 a.m. on that date, the time stamp on the screenshot could have been relevant to her credibility.

But there is neither evidence of what authentication evidence of timing would prove or what more counsel could have done to obtain this authentication evidence under the circumstances. In sum, on this record, Kolanowski fails in his burden to overcome the presumption that counsel provided effective assistance. He has failed to show counsel's performance was not objectively reasonable.

The cases Kolanowski cites confirm this conclusion. State v. Thomas[17] is instructive. In that case, defense counsel had called a witness to offer expert

---

[17] 109 Wn.2d 222, 229-30, 743 P.2d 816 (1987).

testimony showing that Kerry Thomas could not have formed the intent necessary to sustain her conviction.[18] The trial court declined to qualify the proffered expert because she was only a trainee in her profession.[19] The verbatim transcript from the trial, quoted at length in the opinion, "demonstrate[d] that defense counsel was unaware of his 'expert's' lack of qualifications."[20] The supreme court characterized this as a "fail[ure] to conduct appropriate investigations" rather than a strategic choice.[21]

Division Two of this court considered the related question whether a defense attorney acts unreasonably when she fails to satisfy the procedural requirements to admit crucial evidence in State v. Horton.[22] Thomas Horton had been convicted of raping and molesting a child.[23] A mandated reporter had informed Child Protective Services (CPS) that the child, S.S., might be a victim of abuse.[24] A doctor with CPS found penetrating trauma to S.S.'s hymen.[25] But S.S. gave conflicting accounts to the doctor and a forensic investigator on the cause of that trauma.[26] S.S. told the investigator she had been having sexual

---

[18] Id.

[19] Id. at 229.

[20] Id. at 231.

[21] Id. at 230.

[22] 116 Wn. App. 909, 68 P.3d 1145 (2003).

[23] Id. at 910.

[24] Id. at 911.

[25] Id.

[26] Id.

intercourse with a boy other than the defendant.[27] She also told the doctor that Horton had sexually abused her and that she had not been sexually active with anyone else.[28] The record in the case evidenced the precise content of these inconsistent statements.[29]

Confronted with these conflicting accounts, CPS concluded that the allegations were unfounded.[30] But the State charged Horton with rape and child molestation. During cross-examination at trial, Horton's attorney asked S.S. if she had engaged in sexual activity with anyone beside Horton.[31] S.S. answered no, and defense counsel did not challenge her response.[32]

Later, defense counsel attempted to call the forensic investigator and S.S.'s childhood friend so that they might relate S.S.'s statements about sexual activity with her boyfriend.[33] But counsel did not comply with ER 613(b) because he failed to give S.S. "an opportunity to explain or deny her pretrial statements by calling them to [her] attention while [she] was on the stand, or by arranging for

---

[27] Id. at 913.

[28] Id. at 911.

[29] Id. at 913

[30] Id. at 911.

[31] Id. at 913.

[32] Id.

[33] Id. at 914.

[her] to remain in attendance after testifying."[34] On this basis, the trial court excluded the testimony.[35] The jury found Horton guilty.[36]

Horton appealed, arguing that his counsel had rendered deficient assistance by failing to provide a proper foundation for the admission of S.S.'s prior inconsistent statements.[37] Division Two of this court agreed, concluding that the record provided no suggestion that counsel's non-compliance with ER 613(b) supported some "strategy or tactic designed to further [Horton's] interests."[38] Instead, the court observed that counsel had sought to impeach S.S.'s testimony with extrinsic evidence but had failed to lay the proper foundation.[39] The court concluded that procedural non-compliance "was entirely to Horton's detriment; that compliance with ER 613(b) would have been *only* to his benefit."[40]

The Horton court discussed two cases in the Indiana Court of Appeals, Ellyson v. State[41] and Wright v. State.[42] In the first, the trial court had convicted

---

[34] Id. at 916.

[35] Id. at 914.

[36] Id. at 912.

[37] Id.

[38] Id. at 917.

[39] Id. at 916-17.

[40] Id.

[41] Id. at 923; Ellyson v. State, 603 N.E.2d 1369, 1371 (1992).

[42] 581 N.E.2d 978 (1991).

Matthew Ellyson of raping his wife and burglarizing her home.[43] The case record indicated that when authorities conducted rape exams soon after the alleged incident, they found the results "negative as to sexual intercourse that evening."[44] Defense counsel attempted to introduce the exam results during the state investigator's testimony at trial but failed to do so.[45]

On appeal, Ellyson argued that his attorney had acted incompetently by failing to "produce the witnesses necessary to authenticate and show the relevancy of" the rape exams.[46] The reviewing court rejected the notion that such failure was "merely the result of poor strategy or bad tactics."[47] Rather, the decision to introduce the rape exam results was itself a "valid strategic decision" but one executed ineffectively.[48] That "gaffe" in execution rendered the assistance of counsel objectively unreasonable.[49]

In Wright, the second Indiana case, the state charged Russell Wright with child molestation.[50] At trial, defense attempted to call a witness to testify to statements given by the victim, inconsistent with her allegations of molestation.[51]

---

[43] Ellyson, 603 N.E.2d 1369.

[44] Id. at 1372.

[45] Id.

[46] Id. at 1373.

[47] Id. at 1374.

[48] Id.

[49] Id. at 1374-75.

[50] 581 N.E.2d at 978.

[51] Id. at 979.

11

But, as in <u>Horton</u>, the trial court excluded this testimony because defense counsel had failed to first cross-examine the witness as to these statements.[52] Defense counsel made an offer to prove at which time the witness testified that the victim had admitted to fabricating her accusation.[53] Reversing the conviction, the appellate court characterized defense counsel's failure to comply with procedure as a "blunder[]."[54]

In all these cases, the reviewing court had a record clearly establishing what the relevant evidence would show, such as the results of the rape exam in <u>Ellyson</u> or the contents of the offered testimony in the other cases. In all, the defense counsel actually acted to introduce the relevant evidence at trial, rather than merely discussing its possible admission with the court. In each, defense counsel failed to act in an objectively reasonable way that led to exclusion of the evidence.

This case is different. Authentication of the Facebook timestamp was at issue. Without proper authentication the post was not relevant to the victim's credibility. But we simply cannot determine from this record what evidence the timestamp would have provided.

Moreover, this record does not show any unreasonable failure to gain admission of the evidence. Rather, this record shows that counsel took reasonable steps to gain admission of the evidence. In observing the

---

[52] <u>Id.</u>

[53] <u>Id.</u> at 979-80.

[54] <u>Id.</u> at 980.

presumption of effective assistance of counsel, we cannot discount that counsel may have ultimately decided that authentication of the Facebook record would not have advanced the defense case. In short, Kolanowski has failed in his burden to show deficient performance of counsel. Accordingly, we need not reach the other prong of the test: prejudice.

### DNA "Match" Testimony

Kolanowski next argues that his trial counsel was ineffective for failing to object when a forensic scientist for the State testified that the blood on Kolanowski's sweatshirt cuff "matched" Kolanowski's blood sample. Specifically, he contends this evidence was inadmissible without the scientist also providing a probability estimate. We hold that he has failed to overcome the presumption that counsel was effective.

"[W]here the defendant claims ineffective assistance based on counsel's failure to challenge the admission of evidence," we apply a modified three-part version of the Strickland test.[55] Under this test:

> the defendant must show (1) an absence of legitimate strategic or tactical reasons supporting the challenged conduct, (2) that an objection to the evidence would likely have been sustained, and (3) that the result of the trial would have been different had the evidence not been admitted.[56]

The first element is at issue here. Megan Inslee, a forensic scientist from the State's crime lab, testified to DNA testing done on various items of evidence

---

[55] State v. Saunders, 91 Wn. App. 575, 578, 958 P.2d 364 (1998) (internal citations omitted); see State v. Hendrickson, 129 Wn.2d 61, 80, 917 P.2d 563 (1996); McFarland, 127 Wn.2d at 336-37.

[56] Id.

collected by police during their investigation of the crimes. For certain tests, she testified both to whether there was a "match" between items tested and known blood samples and the probability estimates whether the same genetic profile would appear in the population. But neither her testimony nor her lab report included a probability estimate for the DNA test on the blood sample found on Kolanowski's sweatshirt that he was wearing at the time of arrest. Kolanowski argues that counsel either should have objected to this incomplete testimony or moved to exclude it once this witness testified. He argues the failure to do so was objectively unreasonable. We disagree.

Whether and when to object are classic examples of trial strategy.[57] Thus, the issue is whether counsel had any "legitimate strategic or tactical reason[]" for failing to seek exclusion of the "match" testimony.[58]

The State correctly argues that counsel may have determined it strategic to let the DNA evidence of a match to Kolanowski to go unchallenged so the jury would believe that the blood on the sweatshirt was Kolanowski's. This is consistent with the defense's theory that Kolanowski injured himself at work. This also fits within the defense of identity, attempting to place Kolanowski elsewhere at the time of the crimes.

Had counsel objected based on the incomplete evidence, it is likely the court would have sustained the objection based on the controlling law that Kolanowski cites in this appeal. Because the forensic scientist had already

---

[57] See State v. Madison, 53 Wn. App. 754, 763, 770 P.2d 662 (1989).

[58] McFarland, 127 Wn.2d at 336.

testified to probability estimates for the other DNA tests, there is no reason to believe that she could not have also provided the missing evidence for the DNA test on Kolanowski's sweatshirt. Thus, an objection was unlikely to have advanced the defense case.

Alternatively, in the unlikely event that the court would have admitted the evidence without the probability estimate after a proper objection, the jury could have concluded that the blood was S.W.-H.'s. That would have been highly prejudicial to the defense, as there was no other DNA evidence definitively linking Kolanowski to the victim.

Kolanowski counters that the trial court might have excluded all of Inslee's testimony regarding the blood. For the reasons we already discussed, that was highly unlikely, on this record.

In sum, Kolanowski fails to meet his burden under the first prong of the controlling test to show the absence of legitimate strategic or tactical reason for counsel's choice not to exclude the incomplete evidence in this case.

Having failed to meet the first prong of the three part test, we need not consider the remaining prongs of Kolanowski's claim. He has failed to overcome the presumption of effective assistance of counsel.

## COSTS

Kolanowski argues that the court should decline to award the State appellate costs should he not prevail. We agree.

RCW 10.73.160(1) gives appellate courts discretion to decline to impose appellate costs on appeal.[59] Under State v. Sinclair, there is a presumption that indigency continues unless the record shows otherwise.[60]

Here, the trial court found Kolanowski "unable by reason of poverty to pay for any of the expenses of appellate review." Kolanowski's conviction, incarceration, and resultant loss of meaningful income make him further unable to pay such costs and expenses. Nothing in this record overcomes the presumption of Kolanowski's indigence. Thus, an award to the State for appellate costs is inappropriate under these circumstances.

The State cites numerous cases in rebuttal but none are persuasive. In all three cases, the defendants challenged the constitutionality of cost statutes.[61] Two of these cases concerned the imposition of mandatory and not discretionary fees in cases where the defendant had failed to show his indigence.[62]

Here, Kolanowski proved his indigency as the trial court found in its order of indigency. He does not challenge the constitutionality of a cost statute but merely argues that this court should use its statutory discretion to decline an award of costs. We do so.

---

[59] State v. Nolan, 141 Wn.2d 620, 629, 8 P.3d 300 (2000).

[60] 192 Wn. App. 380, 393, 367 P.3d 612 (2016).

[61] State v. Blank, 131 Wn.2d 230, 233, 930 P.2d 1213 (1997); State v. Shelton, 194 Wn. App. 660, 666, 378 P.3d 230 (2016); State v. Stoddard, 192 Wn. App. 222, 226, 366 P.3d 474 (2016).

[62] Shelton, 131 Wn. App. at 669; Stoddard, 192 Wn. App. at 225.

We affirm the judgment and sentence. We also deny costs of appeal to the State.

_____ Cox, J.

WE CONCUR:

_____          _____
Schindler, J                          Becker, J.