**FOR PUBLICATION**



FILED
Jan 20 2012, 8:34 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JOEL M. SCHUMM**
Indiana University – Appellate Clinic
Robert H. McKinney School of Law
Indianapolis, Indiana

**EMILY A. SHROCK**
Certified Legal Intern
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**J.T. WHITEHEAD**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| K.F., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1103-JV-290 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Geoffrey A. Gaither, Magistrate
Cause No. 49D09-1012-JD-3624

**January 20, 2012**

**OPINION – FOR PUBLICATION**

**DARDEN, Judge**

<u>STATEMENT OF THE CASE</u>

K.F. appeals her adjudication as a delinquent child for having committed acts that, if committed by an adult, would constitute burglary as a class B felony;[1] theft as a class D felony;[2] and carrying a handgun without a license, a class A misdemeanor.[3]

We affirm in part, reverse in part, and remand.

<u>ISSUES</u>

1.  Whether sufficient evidence supports K.F.'s true findings for burglary, theft, and carrying a handgun without a license.

2.  Whether the juvenile court abused its discretion by admitting certain testimony into evidence.

<u>FACTS</u>[4]

K.F. lived in a house in Marion County with her mother, Erica Lewis ("Mother"), her mother's fiancé, James Delashmit, and her three siblings, who were ages twelve, nine, and seven ("Mother's other children").  On December 1, 2010, thirteen-year-old K.F. ran away from Mother's home.  Thereafter, Mother changed the locks to the house and the code for the keypad entry to the garage, and K.F. and Mother's other children did not know the new code to the garage keypad.  Mother, however, did not change the code for the alarm system, and K.F. knew the code to the alarm system.  Mother also bagged up some of K.F.'s clothes and shoes and put the bag in the garage.

---

[1] Ind. Code § 35-43-2-1.

[2] I.C. § 35-43-4-2.

[3] I.C. § 35-47-2-1.

[4] We heard oral argument in the Indiana Court of Appeals Courtroom on December 19, 2011.  We commend counsel on their oral advocacy.

2

On December 11, 2010, Mother and Delashmit, who both worked a late shift,[5] left the house to go to work and took Mother's other children to a babysitter. When Mother and Delashmit returned to the house early the next morning, they saw that the door to the house had been forced open; the deadbolt was still locked and there was damage to the door frame and jam. Mother also noticed that the garage keypad cover was open but the garage door was still closed. Once in the house, Mother and Delashmit saw that the Christmas tree had been knocked down and the house—with the exception of K.F.'s bedroom that she shared with her sisters—had been ransacked. As they walked around the house, they realized that the following items had been stolen: multiple televisions, including one that had been mounted to the wall; video game systems; computers; DVD players; jewelry; Christmas gifts; four guns; ammunition; hunting knives; and the bag of K.F.'s clothes that was in the garage. Mother checked the caller ID function on her telephone and saw that she had received two phone calls from K.F.'s friend, William, during the time that she and Delashmit were at work. Mother also pressed the redial button and saw that someone had called that same friend's phone number from Mother's phone. Later that day, an investigating police officer, Officer Justin Johnson, went to William's house and found the bag of K.F.'s clothes, which he returned to Mother. The other items taken from Mother's house were never recovered.

On December 27, 2010, the police found K.F. and took her to the police station, where she met in a room alone with Mother before she spoke to police. While in that room with Mother, K.F. admitted to Mother that she went to Mother's house on the day

---

[5] Mother worked from 3:00 p.m. to 3:00 a.m., and Delashmit worked from 6:00 p.m. to 6:00 a.m.

3

of the burglary to get some of her things but stated that when she arrived at the house, "the door was open" but "nothing [had been] stolen at that time[.]" (Tr. 31).

On December 29, 2010, the State filed a petition alleging that K.F. was a delinquent child for committing the following offenses that would be crimes if committed by an adult: Count 1, burglary as class B felony; Count 2, conspiracy to commit burglary as a class B felony; Count 3, theft as a class D felony; Count 4, carrying a handgun without a license, a class A misdemeanor; and Count 5, dangerous possession of a firearm, a class A misdemeanor.

The juvenile court held a denial hearing on January 24, 2011. During Officer Johnson's direct examination, he recounted what Mother had told him about the burglary and the items missing from the house, and K.F.'s counsel objected based on hearsay. The juvenile court overruled the objection, stating that "it's not hearsay if the declarant [Mother] is available to be cross examined or testify." (Tr. 5).

Thereafter, during Mother's direct examination, when she started to testify about what K.F. had told her while they were in the room at the police station, K.F. objected to the admission of K.F.'s statement to Mother on the basis that the State had failed to prove that it had met the requirements of Indiana Code section 31-32-5-1, the juvenile waiver statute. The juvenile court overruled K.F.'s objection.

Following the State's presentation of evidence, K.F. moved to dismiss all charges pursuant Indiana Trial Rule 41(B). The State conceded that it "d[id]n't have a whole lot of evidence" for Count 2, the conspiracy to commit burglary allegation, and the juvenile court granted K.F.'s motion to dismiss Count 2. (Tr. 33). The juvenile court then entered

4

true findings on Count 1, 3, and 4, and "[o]n the Court's own motion," it "close[d] out" Count 5. (Tr. 38). At the disposition hearing, the juvenile court placed K.F. on probation and ordered that she be placed in the care and custody of her grandmother. Additional facts will be provided as necessary.

DECISION

1. <u>Sufficiency</u>

K.F. argues that the evidence was insufficient to support her true findings for burglary, theft, and carrying a handgun without a license.

> When the State seeks to have a juvenile adjudicated as a delinquent child for committing an act which would be a crime if a committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication.

*E.D. v. State*, 905 N.E.2d 505, 506-07 (Ind. Ct. App. 2009) (internal citations omitted). "Circumstantial evidence is no different than other evidence for this purpose, and standing alone may sufficiently support a conviction." *R.L.H. v. State*, 738 N.E.2d 312, 315 (Ind. Ct. App. 2000).

a. *Burglary*

K.F. first challenges the sufficiency of the evidence to support her true finding for burglary. The burglary statute, Indiana Code section 35-43-2-1, provides that "[a] person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary[.]" The offense is a class B felony if the building or

5

structure is a dwelling.  I.C. § 35-43-2-1.  Thus, to support a true finding for burglary as alleged, the State was required to establish that K.F. broke and entered the dwelling of Mother and Delashmit, with intent to commit the felony of theft therein.

K.F. does not directly contest her involvement in the burglary.  Instead, she challenges the "of another person" element and argues that the evidence was not sufficient to support her burglary true finding because she cannot burglarize or break and enter her own home.  K.F. suggests that the issue "appears to be an issue of first impression in Indiana" and cites to numerous out-of-state cases in support of her argument that the evidence was not sufficient to support a true finding for burglary.  K.F.'s Br. at 5.

The "of another person" element contained in the burglary statute has previously been discussed and analyzed by our court.  We have explained that "the [b]urglary statute's requirement that the dwelling be that 'of another person' is satisfied if the evidence demonstrates that the entry was unauthorized."  *Jewell v. State*, 672 N.E.2d 417, 426 (Ind. Ct. App. 1996) (citing *Ellyson v. State*, 603 N.E.2d 1369, 1373 (Ind. Ct. App. 1992)), *trans. denied*.  "Property is that 'of another person' if the other person has a possessory or proprietary interest in it, even if an accused person also has an interest in that property."  Ind. Code § 35-41-1-23.  Thus, for purposes of the burglary statute, the "of another person" element is satisfied "if the evidence demonstrates the entry was unauthorized, even if the accused may have had a right to possession of the house co-equal with [another] at the time of the breaking."  *Fuller v. State*, 875 N.E.2d 326, 332

6

(Ind. Ct. App. 2007) (citing *Ellyson*, 603 N.E.2d at 1373), *trans. denied, superseded by statute on other grounds*.

For example, in *Fuller*, we upheld a burglary conviction where a husband broke and entered the house, which he had previously shared with his estranged wife, while she was in the house. The evidence showed that at the time of the burglary, the husband had not lived in the house for several weeks, no longer had a key that worked, and smashed the glass portion of the door to gain entry into the house. We stated that we had "little hesitation in concluding that [husband's] entry into the house . . . was unauthorized." *Fuller*, 875 N.E.2d at 333.

Here, the State presented sufficient evidence to show that K.F.'s entry into Mother's home was unauthorized. K.F. ran away from Mother's home on December 1, 2010, and did not keep in contact with Mother. Thereafter, Mother changed the lock on the door, changed the code to the keypad entry on the garage, and packed up K.F.'s clothes and put them in a bag in the garage. Thus, at the time of the burglary on December 11, K.F. had not lived in the house for several weeks, and she no longer had any means of authorized access into the house. Indeed, the evidence reveals that the garage keypad cover was open but the garage door still closed and that the door to the house was forced open with the deadbolt still engaged. Although Mother had not directly told K.F. that she was no longer permitted to enter the house, she indirectly conveyed that message by changing the lock and garage keypad code, and K.F. apparently received that message when she attempted to enter the house but was unable to do so. Because the evidence presented is sufficient to show that K.F.'s entry into her Mother's home was

7

unauthorized, we affirm K.F.'s true finding for burglary. *See, e.g.*, *Fuller*, 875 N.E.2d at 333-34; *Jewell*, 672 N.E.2d at 426-27 (holding that the evidence supported the conclusion that husband's entry into estranged wife's home was unauthorized where husband had moved out, wife had changed locks, and husband entered house through window after removing screen); *Ellyson*, 603 N.E.2d at 1373 (affirming husband's burglary conviction for breaking into house he previously shared with estranged wife even though he may have held a right to possession co-equal with wife at time of breaking but evidence showed entry was unauthorized).[6]

b. *Theft*

K.F. next challenges the sufficiency of the evidence to support her true finding for theft.

Indiana Code section 35-43-4-2 provides that "[a] person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft[.]" Thus, to support a true finding for theft as alleged, the State was required to establish that K.F. knowingly or intentionally exerted unauthorized control over property of Mother and Delashmit, including, "firearms, several electronic items, televisions, miscellaneous jewelry and clothing" with intent to deprive them of its value or use. (App. 13). A theft

---

[6] K.F. argues that these cases do not apply and that she had a right to break into Mother's house and take items from it because Mother had a duty to provide to provide K.F., who was a minor, with food, shelter, and clothing or otherwise face a CHINS proceeding or charges for neglect of a dependent. *See* K.F.'s Br. at 7 (citing Ind. Code § 31-34-1-1, the statute pertaining to circumstances under which a child is a CHINS, and Ind. Code § 35-46-1-4(a)(3), the neglect of a dependent statute). While a parent is required to "necessary food, clothing, and shelter, medical care, education, or supervision," Ind. Code § 31-34-1-1, the record shows that K.F. ran away from home, did not thereafter contact Mother, and took much more from the house than merely the necessary food and clothing.

8

conviction may be sustained by circumstantial evidence. *Bennett v. State,* 871 N.E.2d 316, 323 (Ind. Ct. App. 2007), *opinion adopted by Bennett v. State,* 878 N.E.2d 836 (Ind. 2008).

Again, K.F. challenges the "of another person" element and contends that her theft true finding "cannot stand" because "[t]he State provided no evidence that K.F. took anything from the home except her own clothes." K.F.'s Br. at 8. K.F. suggests that the State failed to prove that she exerted unauthorized control of property of another person because the State failed to present evidence that Mother's or Delashmit's property was ever recovered or found in K.F.'s possession.

While unexplained possession of recently stolen property is to be considered, along with other evidence, when determining whether the evidence supports a conviction for theft, *see Fortson v. State*, 919 N.E.2d 1136, 1143 (Ind. 2010), the theft statute does not require the State to prove that a defendant was found in possession of the stolen property or that the property was later recovered in order to find that a person committed theft. *See* I.C. § 35-43-4-2(a). Instead, the theft statute requires that the person "exert[] unauthorized control over property[.]" *See id.* To "exert control over property" is "to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." I.C.§ 35-43-4-1(a). A person's control over property is "unauthorized" when it is, among other things, "without the other person's consent[.]" I.C. § 35-43-4-1(b).

Here, the evidence reveals that when Mother and Delashmit left their locked up house to work a late shift on December 11, 2010, their property was still at the house.

9

K.F., who had run away approximately two weeks prior to that time, knew the code for the house alarm system, but she no longer knew the code for the garage keypad entry and did not have a functioning key to the house because Mother had changed the locks. When Mother and Delashmit returned home on the morning of December 12, they discovered that the door of the house had been forced open and that several items— including televisions, guns, video game systems, jewelry, and clothing—were missing from the house. Mother also discovered that the cover of the garage keypad had been opened and that, during the time that she and Delashmit were at work, there had been two incoming phone calls from K.F.'s friend, William, and one outgoing phone call to that same friend from Mother's home phone. Additionally, later on December 12, the investigating police officer went to William's house and found the bag of K.F.'s clothes that had been placed in Mother's garage. Finally, K.F. admitted to Mother that she had been at the house on the day of the burglary and theft, although she claimed that nothing had been stolen when she arrived despite the fact that the door was open upon her arrival.[7]

The evidence presented, and the reasonable inferences to be drawn therefrom, are sufficient to support a conclusion that K.F. was present at Mother's house and involved in exerting unauthorized control over Mother's and Delashmit's property by taking and carrying away said property from the house without their consent. *See* I.C. § 35-43-4-1(a) (defining "exert control over property" as including taking and carrying). *See also Bennett*, 871 N.E.2d at 323 (affirming defendant's conviction for theft of tools and knife

---

[7] We will discuss the admissibility of K.F.'s statement to Mother in section 2(a).

where those items were never recovered or found in defendant's possession but circumstantial evidence supported conclusion that defendant had exercised control over items). The fact that K.F. was not later found in possession of the property merely points to her intent to deprive Mother and Delashmit of the property's value or use. Because there was sufficient evidence of probative value from which the trier of fact could have concluded that K.F. was guilty beyond a reasonable doubt, we affirm K.F.'s delinquency adjudication for theft.

c. *Carrying a handgun without a license*

K.F. also contends that the evidence was not sufficient to support her true finding for carrying a handgun without a license.

To support a true finding for carrying a handgun without a license as alleged, the State was required to establish that K.F. carried a handgun on her person without a license. *See* Ind. Code § 35-47-2-1(a);[8] (App. 14). To satisfy these elements, the State must prove that the defendant had either actual or constructive possession of the handgun. *Deshazier v. State*, 877 N.E.2d 200, 204 (Ind. Ct. App. 2007), *trans. denied*.

Actual possession is the direct physical control of the gun. *Bradshaw v. State*, 818 N.E.2d 59, 62 (Ind. Ct. App. 2004). "Constructive possession occurs when somebody has the intent and capability to maintain dominion and control over the item." *Henderson v. State*, 715 N.E.2d 833, 835 (Ind. 1999). To prove capability, the State must show that the defendant is able to reduce the contraband to her personal possession. *Lampkins v.*

---

[8] Indiana Code section 35-47-2-1 was amended after K.F. was alleged to have been a juvenile delinquent for committing carrying a handgun without a license. *See* P.L. 118-2007 § 35. This amendment, which was effective on July 1, 2011, does not affect the issue on appeal.

11

*State*, 682 N.E.2d 1268, 1275 (Ind. 1997), *modified in part on reh'g*, 685 N.E.2d 698 (Ind. 1997).  To prove the intent element, the State must demonstrate the defendant's knowledge of the presence of the contraband.  *Henderson*, 715 N.E.2d at 835.  This knowledge may be inferred from either the exclusive dominion and control over the premises containing the contraband or, if the control is non-exclusive, evidence of additional circumstances that point to the defendant's knowledge of the presence of the contraband.  *Id.*  These additional circumstances may include incriminating statements by the defendant; flight or furtive gestures; defendant's proximity to the contraband; the contraband being in plain view; or the location of the contraband in close proximity to items owned by the defendant.  *Id.*

K.F. maintains that "[t]he disappearance of a gun during a burglary, without more, does not establish actual or constructive possession of the gun by K.F."  K.F.'s Br. at 9. She contends that there was insufficient evidence to show that she had actual possession because there was no evidence that a gun was found or seen on her person, and she argues that that there was insufficient evidence to show that she had constructive possession of a gun because the State failed to present any evidence that she had the intent to maintain dominion and control over a gun.[9]

At the oral argument, the State admitted that there is no evidence to show that K.F. had actual or constructive possession of a gun, and it suggested that K.F.'s true finding for carrying a handgun without a license was likely based on a theory of a "now you see it, now you don't."  The State, however, contends that because the circumstantial

---

[9] K.F. does not challenge the evidence establishing the capability to maintain dominion and control over a gun.

evidence points to the inference that K.F. was in the house at the time of the burglary and because the evidence reveals that guns were taken from the house, then "it follows, equally logically, that she had to have possessed a handgun at some point." State's Br. at 13.

Here, the evidence presented by the State at trial showed merely there were guns in the house when Mother and Delashmit left for work and that the guns were missing when they returned home. The State neither presented evidence that K.F. had actual possession of the guns nor presented evidence of K.F.'s knowledge of the presence of the guns in order to satisfy the intent element of constructive possession. Accordingly, the State did not present sufficient evidence to support a finding that K.F. had possession of a gun. We, therefore, reverse K.F.'s true finding for carrying a handgun without a license.

2.  Admission of Evidence

K.F. argues that the trial court abused its discretion by admitting the following testimony into evidence: (a) K.F.'s statement to Mother made while they were at the police station; and (b) Mother's statements to the police officer who investigated the burglary.

The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). An abuse of discretion occurs "where the decision is clearly against the logic and effect of the facts and circumstances." *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001).

13

a. *K.F.'s statement to Mother*

K.F. contends that the juvenile court erred by admitting into evidence the statement she made to Mother when they were sitting in a room at the police station.[10]

During Mother's direct examination, Mother testified that she went to the police station and spoke with K.F. while they were alone together in a room. When Mother started to testify about what K.F. had told her while they were at the police station, K.F. objected to the admission of K.F.'s statement to Mother on the basis that the State had failed to prove that it had met the requirements of Indiana Code section 31-32-5-1, the juvenile waiver statute. The juvenile court overruled K.F.'s objection, and Mother testified as follows:

> [Mother:] I just remember her saying that she didn't have nothing [sic] to do with it. She came to the house and when she got there the door, she noticed the door was open.
>
> [The State:] Okay.
>
> [Mother:] And um, she went to go get her stuff. She said it wasn't nothing [sic] stolen at that time and she said she just grabbed some of her stuff and then she left. And she said something about, I think her friend Angel and Angel's sister or somebody, had brought her to get her stuff. She said she never said the lights was [sic] on and I think in the bathroom and another room.
>
> [The State:] Okay.
>
> [Mother:] That was about it.
>
> [The State:] Did she give you anymore details about the door was opened?

---

[10] The State did not seek to admit evidence of K.F.'s statements to police.

14

[Mother:]  That…  I…  I…  I…  I don't remember if she said it was kicked open or…  I don't remember when she saying [sic] the door was being open, to be honest.

[The State:]  Okay.  You remember what time…  If she told you when she went to the house that day?

[Mother:]  No, I really don't remember what time she said she went.

(Tr. 31).

K.F. argues that her statement to Mother, which placed her at the house on the night of the burglary, should not have been admitted into evidence because the statement was obtained without a valid waiver of her rights under the juvenile waiver statute. Indiana Code section 31-32-5-1, the juvenile waiver statute, provides, in relevant part, that any of a juvenile's rights under the federal or state constitutions, or under any other law, may be waived only:

> (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
>> (A) that person knowingly and voluntarily waives the right;
>>
>> (B) that person has no interest adverse to the child;
>>
>> (C) meaningful consultation has occurred between that person and the child; and
>>
>> (D) the child knowingly and voluntarily joins with the waiver[.]

Ind. Code § 31-32-5-1(2).  Our Indiana Supreme Court has explained:

> In Indiana, there are thus four requirements that must be satisfied before a juvenile's statements made during a custodial interrogation can be used in the State's case-in-chief.  First, both the juvenile and his or her parent must be adequately advised of the juvenile's rights.  Second, the juvenile must be given an opportunity for meaningful consultation with his or her parent.  Third, both the juvenile and his or her parent must knowingly, intelligently,

15

and voluntarily waive the juvenile's rights. Finally, the juvenile's statements must be voluntary and not the result of coercive police activity.

*D.M. v. State*, 949 N.E.2d 327, 333-34 (Ind. 2011) (internal citations and footnotes omitted).

K.F. contends that her statement to Mother should not have been allowed into evidence because there was not compliance with the juvenile waiver statute's requirements of no adverse interest and meaningful consultation. Specifically, K.F. argues that Mother had an adverse interest to her because Mother was the victim of K.F.'s alleged crimes, and K.F. contends that there was no showing that Mother had a meaningful consultation with her. K.F. suggests that a guardian ad litem or attorney should have been appointed to advise K.F. of her legal rights under the juvenile waiver statute.

The State acknowledges that Mother had an adverse interest to K.F. as the victim of the crimes and that Mother "does not fit neatly the requirements of Indiana Code § 31-32-5-1[.]" State's Br. at 17. The State, however, argues that the protections of the juvenile waiver statute and *Miranda* were not triggered because K.F. was not subjected to a custodial interrogation. The State maintains that "even if [K.F.] w[ere] in custody[,]" she was not subjected to an interrogation because she was not questioned by police. State's Br. at 16. The State contends that "a conversation between the perpetrator and the victim is not contemplated by a statute meant to protect juveniles in conversations with the police." State's Br. at 17. The State maintains that K.F.'s statement to Mother was

16

admissible because it "was nothing more complicated than a statement by a party opponent." State's Br. at 17.

"[A]s a general rule, when a juvenile who is not in custody gives a statement <u>to police</u>, neither the safeguards of *Miranda* warnings nor the juvenile waiver statute is implicated." *S.D. v. State*, 937 N.E.2d 425, 430 (Ind. Ct. App. 2010) (emphasis added), *trans. denied*; *see also S.G. v. State*, 956 N.E.2d 668, 675 (Ind. Ct. App. 2011) (explaining that *Miranda* warnings and the juvenile waiver statute attach only where a person is both in custody and subject to interrogation), *trans. denied*; *G.J. v. State*, 716 N.E.2d 475, 477 (Ind. Ct. App. 1999). To determine whether a person is in custody, we look to "whether a reasonable person under the circumstances could consider himself free to resist the entreaties of police." *P.M. v. State*, 861 N.E.2d 710, 713 (Ind. Ct. App. 2007). "'Interrogation has been defined as a process of questioning <u>by law enforcement officials</u> which lends itself to obtaining incriminating statements.'" *S.G.*, 956 N.E.2d at 676 (quoting *S.D.*, 937 N.E.2d at 430) (emphasis added). "It is well established in the caselaw defining 'interrogation' and 'custody' that the two cannot exist without the presence of a law enforcement officer." *S.G.*, 956 N.E.2d at 676 (quoting Elizabeth A. Brandenburg, *School Bullies—They Aren't Just Students: Examining School Interrogations and the Miranda Warning*, 59 Mercer L.Rev. 731, 734 (2008)).

Here, the juvenile waiver statute was not applicable because K.F. was not subjected to an interrogation when she spoke with Mother. Although K.F. was at the police station at the time she spoke to Mother, her statement to Mother was not the result of an interrogation. The evidence in the record reveals that K.F. was in a room with

17

Mother only when she admitted to Mother that she was at Mother's house on the night of the burglary. Also, there is no evidence that Mother was acting as an agent of the police. Because K.F. was not subjected to an interrogation, the juvenile waiver statute was not applicable to exclude K.F.'s statement to Mother from evidence. *See, e.g.*, *S.G.*, 956 N.E.2d at 676 (holding that questioning of a juvenile by a principal in presence of a police officer did not constitute an interrogation because principal was sole questioner and was not acting as an agent for police); *P.M.*, 861 N.E.2d at 714 (holding that juvenile waiver statute did not apply because juvenile was not subjected to interrogation).[11]

b. *Mother's statements to police*

K.F. also challenges the juvenile court's admission, over her continued hearsay objections, of Mother's statements to the police officer who investigated the burglary.

During the juvenile hearing, Officer Johnson testified that he was dispatched to Mother's house to investigate a burglary, and then the following exchange and objections occurred:

> [THE STATE:] And what happened when you got there?
>
> [OFFICER:] I spoke to the complainant, [Mother], who informed me that her house was burglarized...

---

[11] Because the juvenile waiver statute in this case is not applicable and the State did not seek to admit evidence of K.F.'s statement to police, we need not analyze the juvenile waiver statute's requirements of no adverse interest or meaningful consultation. That is not to say that we are not troubled by what took place in this case, but we leave for another day the issue of whether the State (and the police) should be encouraged or required to appoint a guardian ad litem or an attorney for a juvenile when that juvenile's parent is the victim of the juvenile's crime or has an interest adverse to that of the juvenile. We note that the Indiana State Bar Association's Civil Rights of Children Committee has recommended that the legislature adopt a proposed rule change that all children alleged to have committed a juvenile offense be provided with consultation with an attorney before waiving his or her right to counsel. *See* Bill Brooks, *Access to Counsel for Kids in Courts*, Vol. 55 RES GESTAE No. 5, Dec. 2011, at 15-16. The State Bar Association's House of Delegates has "strongly endorsed the recommendation" and sent it to the Indiana Supreme Court's rules committee for consideration. *Id.* at 15.

[K.F.'S COUNSEL]:  I'm gonna object as to hearsay.

THE STATE:  Judge, Mother is here to testify today…

THE COURT:  Okay.

THE STATE:  And can be cross examined.

THE COURT:  All right.  Overruled.

[THE STATE:]  What…  What did she say?

[OFFICER:]  She informed me that her house was broken into.

* * * * *

[THE STATE:]  Okay.  What all…  What all were you aware of that was reported missing?

[OFFICER:]  Several t.v.'s, one of the main ones that was brought to my attention was that there was [sic] firearms in the house and those were stolen…

[K.F.'S COUNSEL:]  Judge, I'm gonna object as to hearsay.

THE STATE:  Same response, Judge.

[K.F.'S COUNSEL]:  Judge, there is no exception to just because the person is here to testify, that's not an exception to the hearsay rule.

THE COURT:  Overruled.

[THE STATE:]  What else?

[OFFICER:]  Okay.  Also there was jewelry and other electronic device[s].  And there was also clothes which were taken from the house.  Would you like for me to specify on clothes?

[THE STATE:]  Yes, please.

19

[OFFICER:] Okay. The clothes that were taken were from the garage which were in bags. I was informed that those clothes belong to [K.F.].

> [K.F.'S COUNSEL]: Judge, I just need an ongoing objection as to hearsay.
>
> THE COURT: The declarant is here and available for cross examine? Cross examination?
>
> [K.F.'S COUNSEL]: That's not… That's not an exception to the hearsay rule though, Judge.
>
> THE COURT: Right. But it doesn't make it hearsay. It's not an exception, it's not hearsay if the declarant is available to be cross examined or testify. Overruled.
>
> [K.F.'S COUNSEL]: It's an out… It's an out of Court statement, offered for the truth of the matter asserted.
>
> THE COURT: Overruled.

(Tr. 3-5).

K.F. contends that the juvenile court abused its discretion by admitting the officer's testimony into evidence because it was contrary to Indiana Evidence Rule 801 and asserts that the juvenile court "appears to be laboring under a pre-1991 view of the admissibility of hearsay, which should be corrected and updated for the benefit of the litigants and lawyers who appear before him in the high-volume Marion County juvenile court." K.F.'s Br. at 12.

Under Evidence Rule 801(d)(1), a prior statement by a witness is "not hearsay" if:

> the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony and was given under oath subject to the penalty of perjury at a trial, hearing or other proceeding; or in a deposition; or (B) consistent with the declarant's testimony, offered to rebut an express or implied charge against the declarant of recent fabrication or improper

20

influence or motive, and made before the motive to fabricate arose; or (C) one of identification of a person made shortly after perceiving the person[.]

(Emphasis added).

The State agrees that "K.F. is correct: the statements were in fact hearsay" under Indiana Evidence Rule 801 and acknowledges that the statements did not qualify as a statement that is not hearsay under Evidence Rule 801(d). The State also concedes that the testimony was not "subject to any of the normally recognized exceptions to the hearsay rule" under Evidence Rule 803. State's Br. at 19. The State, however, contends that the admission of the officer's testimony was harmless error because the testimony was merely cumulative of Mother's and Delashmit's testimony regarding what was taken from the house during the burglary.

In her reply brief, K.F. "concedes that the error on this issue, standing alone, is not grounds for reversal" but maintains that "[a]n opinion from this Court that analyzes the erroneous view of hearsay would be very beneficial to the many lawyers who appear regularly in the high volume court where such rulings are routine." K.F.'s Reply Br. at 7.

"[R]egardless of whether the declarant is available at trial for cross-examination, a hearsay statement is not ordinarily admissible as substantive evidence." *Warren v. State*, 725 N.E.2d 828, 835 n.1 (Ind. 2000) (explaining the abrogation of the "Patterson Rule" that allowed admission of a declarant's out-of-court statement as substantive evidence so long as the declarant was available at trial for cross-examination); *see also Appleton v. State*, 740 N.E.2d 122, 124 (Ind. 2001) (summarizing the evolution and problems with the Patterson Rule); *Modisett v. State*, 578 N.E.2d 649, 652-654 (Ind. 1991) (overruling

21

the Patterson Rule and adopting Federal Rule of Evidence 801(d) that later became codified as Indiana Rule of Evidence 801(d)).

Here, the officer's testimony did indeed constitute hearsay and did not qualify under Evidence Rule 801(d) for exclusion from the definition of hearsay. Accordingly, the trial court erred by admitting the officer's testimony as substantive evidence. The admission of such testimony, however, was harmless error because it was merely cumulative of Mother's and Delashmit's testimony regarding what was taken from the house during the burglary. *See Mathis v. State*, 859 N.E.2d 1275, 1280 (Ind. Ct. App. 2007) (explaining that "the admission of hearsay is not grounds for reversal where it is merely cumulative of other evidence admitted").

3. Remand to Correct Disposition Order and CCS

Lastly, we address a procedural discrepancy contained in the record. In her brief, K.F. notes that "The Disposition Order incorrectly states that K.F. was found true on Count 2, Conspiracy to Commit Burglary and was not found true to Count 3, Theft. App. 7." K.F.'s Br. at 2 n.1.

As noted in the facts above, the State filed a petition alleging that K.F. was a delinquent child for committing the following offenses that would be crimes if committed by an adult: Count 1, burglary as class B felony; Count 2, conspiracy to commit burglary as a class B felony; Count 3, theft as a class D felony; Count 4, carrying a handgun without a license, a class A misdemeanor; and Count 5, dangerous possession of a firearm, a class A misdemeanor.

22

Following the State's presentation of evidence at the fact finding hearing, and pursuant to K.F.'s motion to dismiss under Indiana Trial Rule 41(B), the juvenile court "grant[ed] [her] motion as to count 2" and dismissed the conspiracy to commit burglary allegation. (Tr. 34). Thereafter, the juvenile court entered true findings "as to count 1, burglary[,]" "count 3, theft[,]" and "Count 4, carrying a handgun without a license," and, on its own motion, "close[d] out" Count 5. (Tr. 38). The juvenile court's written order on the fact finding hearing, dated January 24, 2011, also indicates the disposition verbalized by the judge during the hearing. (*See* App. 62-63).

However, the juvenile court's dispositional order, dated February 23, 2011, indicates that K.F. was adjudicated a delinquent for committing "Count 1 – Burglary[,]" "Count 2 – Conspiracy to Commit Burglary[,]" and "Count 4 – Handgun Carrying Without a License[.]" (App. 7). Additionally, the CCS entry dated February 23, 2011 reflects the same error in true findings as the dispositional order and indicates that Count 3 for theft was "Dismissed." (App. 3).

Because the transcript from the juvenile hearing unambiguously indicates that Count 2 (conspiracy to commit burglary) was dismissed and that a true finding was entered on Count 3 (theft), we remand this case to the juvenile court with instructions to correct the February 23, 2011 disposition order and the February 23, 2011 CCS entry.

## CONCLUSION

Sufficient evidence supports the juvenile court's findings that K.F. committed acts that would constitute burglary and theft if committed by an adult. However, there is insufficient evidence to support the juvenile court's finding that K.F. committed an act

23

that would constitute carrying a handgun without a license. Additionally, the juvenile court did not abuse its discretion by admitting into evidence K.F.'s statement made to Mother. The juvenile court did, however, err by allowing a police officer to testify as to Mother's hearsay statements, but the admission of such testimony was harmless error. Finally, we remand with instructions for the juvenile court to correct the February 23, 2011 disposition order and CCS entry to accurately reflect the true findings that were entered by the court.

Affirmed in part, reversed in part, and remanded.

FRIEDLANDER, J., and VAIDIK, J., concur.