## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 30 2016, 8:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Ruth Johnson
Patricia Caress McMath
Marion County Public Defender Agency
Appellate Division
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| J.B., *Appellant-Respondent,* v. State of Indiana, *Appellee-Petitioner.* | September 30, 2016 |
| | Court of Appeals Case No. 49A04-1603-JV-416 |
| | Appeal from the Marion Superior Court |
| | The Honorable Marilyn A. Moores, Judge The Honorable Gary Chavers, Magistrate |
| | Trial Court Cause No. 49D09-1510-JD-1923 |

**Kirsch, Judge.**

[1] J.B. appeals his adjudication as a delinquent child for committing acts, which, if committed by an adult, would constitute Class A misdemeanor dangerous possession of a firearm[1] and Level 6 felony pointing a firearm.[2] J.B. raises the following restated issue on appeal: whether the juvenile court erred when it admitted evidence of J.B.'s prior hostile encounters with the victim.

[2] We affirm.

## Facts and Procedural History

[3] On October 21, 2015, Brandi Ruiz ("Ruiz") drove her friend from Churchill Ranch Apartments in Indianapolis, Indiana, where Ruiz lived, to the friend's car, which was parked across the street from the apartment complex.[3] As Ruiz was driving toward the exit of the apartment complex, she saw a white car parked and some people standing around it, including her neighbor's son named D.W. Ruiz continued out of the complex and into the parking lot where her friend's vehicle was parked. Ruiz parked her vehicle in a parking spot next to the friend's car, when a white Chevy Impala pulled up behind Ruiz's van. A male, later determined to be J.B., was in the front passenger seat. J.B. leaned

---

[1] *See* Ind. Code § 35-47-10-5(a).

[2] *See* Ind. Code § 35-47-4-3(b).

[3] We note some inconsistency in the record concerning the date of the incident. The Petition for Delinquency, the probable cause affidavit, and the testimony of two police officers indicated the date as October 21, 2015, but the prosecutor at trial referred to October 22 when questioning the victim, Brandi Ruiz. J.B. refers to both dates in his appellant's brief. *See Appellant's Br*. at 5 (stating October 21 in Statement of Facts section) and at 7 (referring to "October 22nd incident" in Argument section).

the upper half of his body up and out of the front passenger window, sat on the door, and while reaching over the car's roof, pointed a firearm at Ruiz and said, "Do you want to f*ck with me now b*tch?" *Tr*. at 29. Ruiz recognized J.B. from prior encounters with him. J.B. got back into the Impala, and it drove away, first returning to the Churchill Ranch Apartments complex, then exiting the complex and heading toward Pendleton Pike.

[4] Ruiz drove back to her apartment and called the police. Lawrence Police Department Officer Jeffrey Gray ("Officer Gray") was in the area and responded to a radio dispatch of a male pointing a firearm. He saw a white Chevy Impala, matching the description given to dispatch, as it was coming out of the Churchill Ranch Apartments. He pulled the car over, and the driver was determined to be D.W. J.B. was in the front passenger seat, and another male was in the back seat. D.W. did not have a driver's license and was arrested. Prior to towing the vehicle, officers searched it. When the back seat was flipped down, the trunk was accessible, and in it, the police discovered a loaded .22 caliber revolver. Another officer brought Ruiz to the scene, and she identified J.B. as the person who had pointed the gun at her.

[5] On October 22, the State filed a petition alleging that J.B. was a delinquent child for committing: (1) dangerous possession of a firearm, a Class A misdemeanor when committed by an adult; (2) pointing a firearm, a Level 6 felony when committed by an adult; (3) carrying a handgun without a license, a Class A misdemeanor when committed by an adult; and (4) criminal trespass, a Class A misdemeanor when committed by an adult. *Appellant's App*. at 21-22.

[6] Prior to the start of the January 13, 2015 denial hearing, the State filed a motion to introduce evidence of other crimes, wrongs, or acts under Indiana Rule of Evidence 404(B), specifically evidence of (1) two prior encounters between J.B. and Ruiz, one occurring on October 6 at the apartment complex and another occurring about a week later at a Walmart, and (2) evidence that during this same time frame Ruiz was the victim of vandalism to her vehicle. *Id.* at 64. J.B. objected to the State's motion, asserting that, first, the State failed to provide required advance notice of intent to use such evidence and, second, the State's attempt to introduce evidence of uncharged conduct was improper. *Tr.* at 6-7. The State responded that the October 21 incident should not be "viewed in a vacuum," the juvenile court "needs to know the history between the parties," and the evidence of the prior incidents was relevant to J.B.'s motive. *Id.* at 7. Following argument, the juvenile court granted the State's motion as to the October 6 incident and the Walmart incident, but prohibited any evidence concerning the vandalism, as nothing tied J.B. to those acts. The juvenile court offered to grant a continuance to J.B., in order to provide him with additional time to prepare; J.B. declined a continuance and elected to proceed with the hearing, but again noted "for the record" his objection to the admission of the evidence. *Id.* at 9.

[7] At the denial hearing, Ruiz testified that she recognized J.B. from two prior hostile encounters with him, one occurring on October 6 and another about a week later at a nearby Walmart. Ruiz testified that, on the afternoon of October 6, she was returning to the apartment complex in her van, with her

then-seventeen-year-old daughter ("Daughter") and Daughter's child. Ruiz saw J.B., D.W., and a female sitting on the sidewalk near where she parked. As Ruiz and Daughter got out of the van, J.B. stood up and said, "[H]ere comes that nasty b*tch that I can't stand." *Id*. at 19. J.B. told the female sitting with him to "jump" Ruiz and Daughter, urging the female to "just get them." *Id*. at 21. At some point, the female came up behind Ruiz and "slugged" her in the side of her head. *Id*. at 22. Thereafter, the female "jumped" Daughter, knocking her to the ground, and they "started feuding." *Id*. While Daughter was on the ground, the female "smashed [Daughter's] head into the ground." *Id*. at 23. A maintenance worker at the complex intervened, but about that same time, J.B. "walked over and kicked [Daughter] in the face while she was on the ground." *Id*. at 23. During the fighting, Ruiz used her cell phone to call the Lawrence Police Department. Officers arrived, Ruiz made a report of the incident, and an ambulance transported Daughter to the hospital.

[8]   According to Ruiz, about a week later, she and Daughter were in Ruiz's van and were driving into a nearby Walmart parking lot, when she saw J.B. and a female. When J.B. and the female saw Ruiz, "they started waving their arms and calling names." *Id*. at 24. Ruiz called the police, who instructed Ruiz to go home, which she did.

[9]   Ruiz described the October 21 incident, where she saw J.B. pull himself out of an open window of the Impala and point a gun at her. Ruiz described that she was still seated in her van, but that she saw J.B. through her window and that he "was screaming" at her and said, "[D]o you want to f*ck with me now

b*tch?" *Id*. at 29. After that, J.B. returned inside the vehicle, and it drove away. Ruiz immediately went back to her apartment and called the police.

[10] Officer Gray testified that he responded to the dispatch call, located the Impala, and stopped the vehicle. The driver, D.W., did not possess a driver's license. Officers at the scene located a loaded revolver in the trunk area, which was accessible from the rear seat of the car. None of the three occupants possessed a permit to carry a handgun.

[11] J.B. also testified at the denial hearing, stating that, on the day of the Walmart encounter, Ruiz passed him in her van as he was walking with his sister, and she circled back and "started throwing stuff at us" and making racial slurs to him. *Id*. at 75. J.B. said that, later that day, a detective transported him and his sister to a police station for questioning about the matter. With regard to the subsequent October 21 incident, for which he was charged, J.B. testified that he had been playing basketball with his cousin, D.W., and that as they were leaving the complex, police pulled over their vehicle. J.B. denied having gone into the parking lot where Ruiz said that J.B. reached out of the Impala and pointed a gun at her, taking the position that Ruiz made up the story to get him in trouble. J.B. acknowledged that a history of verbal exchanges existed between Ruiz and him, stating "I mean, she started it. I ain't going to lie. I did, I called her names back." *Id*. at 80.

[12] At the conclusion of the denial hearing, J.B. moved for a dismissal of all counts pursuant to Indiana Trial Rule 41(B). The juvenile court entered true findings

for Counts 1 through 3, but dismissed Count 4 (criminal trespass) pursuant to J.B.'s motion, and the juvenile court adjudicated J.B. to be a delinquent child. At the February 2016 dispositional hearing, the juvenile court merged Count 3 with Count 1. On the true findings for Count 1 Class A misdemeanor dangerous possession of a firearm and Count 2 Level 6 felony pointing a firearm, the juvenile court imposed a suspended commitment to the Indiana Department of Correction and placed J.B. on formal probation. J.B. now appeals.

## Discussion and Decision

[13] J.B. asserts that the juvenile court erred when it admitted evidence of the two prior hostile encounters that Ruiz had with J.B., one on October 6 and the other approximately one week later at the Walmart parking lot. He argues that the prejudicial impact of the evidence outweighed any probative value of the "marginally relevant evidence." *Appellant's Br*. at 10.

[14] The admission and exclusion of evidence falls within the sound discretion of the trial court, and we review the admission of evidence only for abuse of discretion. *K.F. v. State*, 961 N.E.2d 501, 510-11 (Ind. Ct. App. 2012), *trans. denied*. An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances. *Id*. "'Errors in the admission or exclusion of evidence are to be disregarded as harmless error unless they affect the substantial rights of a party.'" *J.L. v. State*, 5 N.E.3d 431, 436 (Ind. Ct. App. 2014) (quoting *Fleener v. State,* 656 N.E.2d 1140, 1141 (Ind. 1995)).

[15]    Indiana Evidence Rule 404(b) provides in pertinent part:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of *motive*, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]

(Emphasis added.)

[16]    In assessing the admissibility of Evidence Rule 404(b) evidence, a trial court must (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at issue other than the defendant's propensity to commit the charged act, and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Indiana Evidence Rule 403. *Witham v. State*, 49 N.E.3d 162, 166 (Ind. Ct. App. 2015). "If evidence has some purpose besides behavior in conformity with a character trait and the balancing test is favorable, the trial court can elect to admit the evidence." *Boone v. State*, 728 N.E.2d 135, 138 (Ind. 2000).

[17]    Here, over J.B.'s objection, the juvenile court granted the State's motion to introduce Evidence Rule 404(b) evidence, specifically the October 6 incident and the encounter at Walmart a week later, for the purpose of showing J.B.'s motive for his actions on October 21. Thereafter, during the denial hearing, Ruiz testified, without objection, about the October 6 incident, where, at J.B.'s urging, a female "jumped" Ruiz and Daughter, and police were called to the scene. *Tr.* at 23. Ruiz also described the Walmart incident occurring about a

week later, in which she encountered J.B. and a female in a Walmart parking lot, and J.B. waved his arms and yelled at Ruiz, and Ruiz again called the police. He argues on appeal that the prejudicial impact of the Evidence Rule 404(b) evidence outweighed its probative value, if any.

[18] The State asserts, as an initial matter, that J.B. "has waived his [] argument, both because he is raising a different argument on appeal than he raised in the juvenile court and because he did not raise any contemporaneous objection to the admission of this evidence during Ruiz's testimony." *Appellee's Br*. at 7. In arguing waiver, the State maintains that J.B. asserted "only two, narrow arguments" in objecting to the admission of the evidence, namely, that the State failed to provide timely notice of its intent to use the evidence and that the evidence would not qualify for admission because it was evidence of uncharged conduct. Because J.B. "did not mention Rule 403 or argue the prejudicial effect would outweigh the probative value," the State urges that he has waived his Evidence Rule 403 argument on appeal. *Id*. at 8-9. J.B. maintains that, although J.B. did not specifically cite to Evidence Rule 403 while making his objection and argument to the State's use of Evidence Rule 404(b) evidence, probative value versus prejudicial effect "is always a consideration when the admission of evidence is challenged under Rule 404(b)" and was implicitly an element of his argument. *Reply Br*. at 5. J.B. also argues that, even though he did not object again when Ruiz testified, he did not waive his argument concerning admissibility of the evidence because he had already made his objection known to the trial court, and "[t]here were no 'fresh developments'

that might have led the court to change its decision regarding admissibility." *Id.* at 6. We cannot agree.

[19] As J.B. acknowledges,

> A contemporaneous objection at the time the evidence is introduced at trial is required to preserve the issue for appeal[.] . . . The purpose of this rule is to allow the trial judge to consider the issue in light of any fresh developments and also to correct any errors. Another purpose of the contemporaneous objection rule is to promote a fair trial by preventing a party from sitting idly by and appearing to assent to an offer of evidence or ruling by the court only to cry foul when the outcome goes against him. The rule requires parties to voice objections in time so that harmful error may be avoided or corrected and a fair and proper verdict will be secured.

*Reply Br.* at 6 (citations and quotation omitted). We recognize that, in this case, Ruiz took the stand and began her testimony about the two incidents right after the juvenile court had ruled that it would permit the State to present such evidence; thus, the court's ruling and Ruiz's testimony were close in time. However, the fact remains that J.B. did not comply with the contemporaneous objection requirement, and he thereby waived the issue for appeal. *N.W.W. v. State*, 878 N.E.2d 506, 509 (Ind. Ct. App. 2010) (respondent waived objection to admissibility of evidence by failing to make timely and specific objection at denial hearing), *trans. denied.*

[20] Furthermore, even if J.B. had properly preserved the issue for review, we find no error in the juvenile court's admission of the evidence. As J.B. correctly

observes, "Evidence of motive is always relevant to proving a crime." *Appellant's Br.* at 9. Our Supreme Court has made clear that "'hostility is a paradigmatic motive for committing a crime.'" *Whitham*, 49 N.E.3d at 167 (quoting *Hicks v. State*, 690 N.E.2d 215, 222 (Ind. 1997)). Although J.B. concedes that evidence of a defendant's prior confrontations with a victim may be admissible to show the parties' relationship and existing hostility between them, he maintains that, in this case, the "highly" prejudicial effect of the admitted evidence outweighed "its limited probative value." *Appellant's Br.* at 9. He also argues that whether "someone else" hit Ruiz in the head and whether he kicked Daughter has little to no bearing "on whether he pointed a gun at Ruiz a couple of weeks later." *Id.* at 10. We disagree.

[21] The evidence of the October 6 incident was that J.B., D.W., and a female were on a sidewalk when Ruiz pulled up and parked her van. J.B. said, "[H]ere comes that nasty b*tch that I can't stand." *Tr.* at 19. J.B. urged the female with him to "jump" Ruiz and Daughter, which she did, hitting Ruiz in the head and knocking Daughter to the ground. *Id.* at 21. About the time that an apartment complex worker intervened and broke up the fight, J.B. "walked over and kicked [Daughter] in the face while she was on the ground." *Id.* at 23. Police arrived and made a report of the incident. The Walmart encounter occurred about a week later, and Ruiz again contacted the police, who later in the day picked up J.B. and took him to the police station for questioning. Evidence of the October 6 incident and the Walmart encounter illustrated the antagonistic relationship between the parties, and it revealed that, due to Ruiz's calls to

police, J.B. faced questioning by law enforcement. The two incidents were probative of J.B.'s motive to follow Ruiz, point a gun at her, and rhetorically ask, "Do you want to f*ck with me now b*tch?" *Id*. at 29. The evidence was properly admitted under Evidence Rule 404(b) to show motive. *See Iqbal v. State*, 805 N.E.2d 401, 408 (Ind. Ct. App. 2004) ("where a relationship between parties is characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and motive for committing the crime."). Accordingly, the juvenile court did not abuse its discretion when it admitted the evidence.

[22] Affirmed.

[23] May, J., and Crone, J., concur.