## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 30 2018, 10:36 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Emilee L. Stotts
Huntington County Public Defender
Marion, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

R.T.,

*Appellant-Respondent,*

v.

State of Indiana,

*Appellee-Petitioner.*

November 30, 2018

Court of Appeals Case No.
18A-JV-1082

Appeal from the
Huntington Circuit Court

The Honorable
Karen A. Springer, Senior Judge

Trial Court Cause No.
35C01-1802-JD-7

**Kirsch, Judge.**

[1]     R.T. appeals his adjudication as a delinquent child for committing theft, which would be a Level 6 felony if committed by an adult. He raises the following

issue for our review: whether the State presented sufficient evidence to support his delinquency adjudication.

[2] We affirm.

## Facts and Procedural History

[3] In February 2018, R.T. was sixteen years old and lived with his parents, his younger brother, and two big dogs in Andrews, Indiana. His father locked guns and medication in a gun safe that had a dial combination and was located in the living room of the home. R.T.'s father did not trust R.T. with the combination to the safe, but R.T. watched his brother unlock the safe. *Tr. Vol. III* at 62-63. On the afternoon of February 13, 2018, R.T. told his friend via a Facebook message, "Hell ya, G, same. Trying to lics on some poles soon," which a police officer subsequently stated meant that R.T. was going to take some guns. *Id.* at 150-51, 162-63; *State's. Ex.* 6.

[4] The next day, R.T. went to the Boys and Girls Club after school, and when his father picked him up at around 5:00 p.m., R.T. had his backpack. *Id.* at 64. At approximately 5:30 p.m. that night, R.T.'s father opened the safe to retrieve R.T.'s medication and, after doing so, locked it again. *Id.* at 65. At that time, R.T.'s father did not notice anything missing from the safe. *Id.* R.T. went to bed before his father that night, and his father woke up several times through the night. *Id.* at 66-67. Two of the times that the father woke up, R.T. was also awake. *Id.* at 67-68. The first time R.T. was in the bathroom, and the second time he was standing five feet from the safe. *Id.* at 68. R.T. told his father that

he could not sleep and that his medication needed to be increased. *Id.* Over the course of the night, R.T.'s father did not hear any intruders, the doors and lower-level windows were locked, and the dogs did not bark. *Id.* at 68-69.

[5] The next morning, when R.T.'s mother was getting the boys ready for school, R.T.'s backpack was missing and was never found. *Id.* at 97-98, 102, 112-13. R.T.'s father stayed home that day. R.T.'s brother came home from school around 3:20 p.m., and while R.T.'s father and brother were talking, his brother noticed that the safe was unlocked. *Id.* at 72. R.T.'s brother opened the safe and realized that three handguns and an assault rifle were missing. *Id.* at 72-73. The safe was not damaged, and there was no sign of a burglary. *Id.* at 81, 90, 124.

[6] R.T.'s father called 911 to report the missing guns and told the dispatcher that he suspected R.T. had taken the guns. *Id.* at 75. At that time R.T. was at the Boys and Girls Club, so R.T.'s father met the police there. The police released R.T. into his parents' custody that night, and the police guarded the house overnight. *Id.* at 76-77, 126-27. The police searched the area for the missing guns, but they were never recovered. R.T.'s parents spoke to him about the seriousness of the crime that had been committed, and when R.T.'s father asked R.T. where the guns were, R.T. said that they were "not in Andrews anymore." *Id.* at 77-78. After school the next day, R.T. went to be interviewed by the police, and after the interview, he was taken into custody and placed in the Grant County Juvenile Detention Facility. That evening, R.T. called his father around 6:30 p.m. to say that he was scared and sorry and "that he would admit

to the theft of the weapons but he [would] not tell who has them because he's not going to snitch them out." *Id*. at 80.

[7] On February 22, 2018, the State filed a petition alleging that R.T. was a delinquent child for committing theft, which would be a Level 6 felony if committed by an adult. At a fact-finding hearing held on March 9, 2018, the juvenile court found R.T. to be a delinquent child. At a later-held disposition hearing, the juvenile court placed him in the Indiana Department of Correction for placement in a correctional facility for children. R.T. now appeals.

## Discussion and Decision

[8] R.T. argues that the State failed to present sufficient evidence to support his delinquency adjudication for theft. He asserts that the evidence presented failed to connect him "beyond a reasonable doubt as the person who took the firearms." *Appellant's Br*. at 10. When the State seeks to have a juvenile adjudicated as a delinquent child for committing an act that would be a crime if a committed by an adult, the State must prove every element of the crime beyond a reasonable doubt. *Z.A. v. State*, 13 N.E.3d 438, 439 (Ind. Ct. App. 2014). In reviewing a juvenile adjudication, this court will consider only the evidence and reasonable inferences supporting the judgment and will neither reweigh evidence nor judge the credibility of the witnesses. *Id*. If there is substantial evidence of probative value from which a reasonable trier of fact could conclude that the juvenile was guilty beyond a reasonable doubt, we will affirm the adjudication. *K.F. v. State*, 961 N.E.2d 501, 506 (Ind. Ct. App. 2012),

*trans. denied.* "Circumstantial evidence is no different than other evidence for this purpose and standing alone may sufficiently support a conviction." *R.L.H. v. State*, 738 N.E.2d 312, 315 (Ind. Ct. App. 2000).

[9] The juvenile court entered a true finding for theft, which would be a Level 6 felony if committed by an adult. To support a true finding, the State was required to prove, beyond a reasonable doubt, that R.T. knowingly or intentionally exerted unauthorized control over the property of another person with the intent to deprive the other person of any part of its value or use and that the property stolen was a firearm. Ind. Code § 35-43-4-2(a)(1)(B)(i).

[10] Here, the evidence most favorable to the judgment showed that, two days before the guns went missing, R.T. wrote a Facebook message to a friend, in which he stated, "Trying to lics on some poles soon," which a police officer stated meant that R.T. was going to take some guns. *Tr. Vol. III* at 150-51, 162-63; *State's. Ex.* 6. In the middle of the night before the guns were stolen, R.T.'s father found R.T. standing five feet away from the safe where the guns were kept and from where they were found to be missing the next day. *Id.* at 68. Although R.T.'s father never told R.T. the combination to the safe, R.T. had watched his brother unlock it. *Id.* at 62-63. After the guns were stolen, R.T. tacitly confessed by admitting to his father that he knew who had the guns and that the guns were not in Andrews, Indiana anymore. *Id.* at 77-78, 80. He also told his father that, "he would admit to the theft of the weapons but he [would] not tell who has [the guns] because he's not going to snitch them out." *Id.* at 80. The State also presented evidence that the house was locked, no one heard

any intruders, the dogs did not bark, and there was no sign of a burglary, all of which led to an inference that the theft was done by someone who lived in the house. *Id.* at 81, 90, 124. Further, R.T.'s backpack, which was likely where he stashed the guns, went missing on the same day that the guns did. *Id.* at 97-98, 102, 112-13. Based on the evidence, the juvenile court could reasonably infer that R.T. stole the guns from the safe. His arguments to the contrary are merely a request to reweigh the evidence, which we cannot do. *Z.A.*, 13 N.E.3d at 439. We, therefore, conclude that sufficient evidence was presented to support R.T.'s delinquency adjudication for theft.

Affirmed.

Vaidik, C.J., and Riley, J., concur.