## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jun 04 2015, 9:18 am
Kevin S. Smith
CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE

Ricardo B. Fuller
Carlisle, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Ellen H. Meilaender
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ricardo B. Fuller,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 4, 2015

Court of Appeals Case No.
79A02-1411-CR-818

Appeal from the Tippecanoe
Superior Court
The Honorable Thomas H. Bush,
Judge
Cause No. 79D02-0603-FA-6

**Bailey, Judge.**

# Case Summary

[1] In 2006, Ricardo Fuller ("Fuller") was convicted of Burglary, as a Class A felony; Battery, as a Class C felony; Domestic Battery, as a Class A

misdemeanor; Criminal Confinement, as a Class B felony; Invasion of Privacy, as a Class A misdemeanor; and Stalking, as a Class C felony.[1]  Fuller was also adjudicated to be a Habitual Offender.  After a direct appeal that vacated a conviction, Fuller was sentenced to an aggregate term of imprisonment of sixty five years.

[2]  Fuller subsequently sought modifications of his sentences.  Proceeding *pro se*, Fuller now appeals the trial court's dismissal of a motion seeking modification of his sentence.

[3]  We affirm.

# Facts and Procedural History

[4]  We take our statement of the facts from this Court's prior opinion, which addressed Fuller's direct appeal from his criminal conviction:

> The evidence most favorable to the convictions is that Fuller married L.F. in April 2005.  They began experiencing marital problems in September of that year, and L.F. moved in with her mother.  By November, Fuller and L.F. had reconciled and decided to rent a house in Lafayette.  Only L.F. signed the lease, but Fuller and L.F. both were listed as tenants.
>
> On January 10, 2006, L.F. and Fuller had an argument and Fuller struck L.F.  L.F. went to her mother's home and called police from there.  Fuller also went to the home and entered it without permission.  Police officers arrived and warned Fuller that he was trespassing, but

---

[1] Fuller had been convicted of Stalking in Violation of an Order of Protection, as a Class C felony; in his initial appeal, this Court reversed that conviction.

they could not substantiate that L.F. had been battered. They then escorted Fuller back to the house where he had been living with L.F. He packed some belongings and told police that he was going to Kokomo to stay with a "girlfriend." Tr. p. 161.

On February 7, 2006, L.F. met with her landlord and had Fuller removed from the lease. It was the landlord's practice to change the locks on the door anytime there was a change in tenants. On February 10, 2006, L.F. arrived home from work at approximately 10:30 p.m. Also there was L.F.'s roommate, Brandy Loman. After she arrived home, Fuller called L.F., who told Fuller that she had to go to bed and not to call her anymore. Fuller called again, and at that same time there was a knock on the front door, which was locked. Loman looked out the window and saw that it was Fuller. L.F. and Loman refused to open the door, and Fuller said that he would break the door open if they did not let him in. L.F. attempted to call 911, but her phone was no longer working. Fuller then smashed the glass on the door, reached in and unlocked it, and entered the house.

L.F. escaped through the back door of the house, but Fuller caught up with her outside and began battering her. L.F. remembers Fuller punching her in the head and kicking her in the stomach, and she lost consciousness during the beating. L.F. was taken to the hospital, where she was found to have sustained a fracture to the medial wall of the right eye socket, or the part of the eye socket next to the nose. She also had an ethmoid fracture, at the base of the cranium, as well as numerous abrasions and a six-inch laceration above her right eyebrow.

L.F. obtained a protective order against Fuller on February 21, 2006. Nevertheless, Fuller repeatedly continued calling L.F. and leaving threatening messages for her.

On March 23, 2006, the State charged Fuller with Class A felony burglary, Class C felony battery resulting in serious bodily injury, Class D felony domestic battery, and Class A misdemeanor domestic battery in connection with the February 10-11, 2006 incident. The State also charged Fuller with two counts of Class A misdemeanor invasion of privacy and one count of Class D felony invasion of privacy in connection with violations of the February 21, 2006 protective order.

On March 26, 2006, L.F. got home from work and found Fuller waiting for her in the dining room. Fuller accused L.F. of being

unfaithful and punched her in the face at least ten times. He then made L.F. get trash bags in which to put her roommate Loman's belongings. Fuller had both L.F.'s home phone and cell phone so she could not call for help. While L.F. was attempting to put Loman's things in the trash bags, Fuller continued accusing her of cheating and continued punching her, and also kicked her in the stomach and in the head. He threw a beer can at L.F., which lacerated one of her earlobes. He pushed L.F. down the stairs. He threatened to kill L.F. if she admitted to cheating, and to kill her if she did not admit it because he would know she was lying. Then, after hitting L.F. a few more times, Fuller told her to take a shower. She did, and afterwards Fuller allowed her to go to sleep.

Despite having visible marks on her face, L.F. persuaded Fuller to let her go to work the next morning. She was found to have a "blowout" comminuted fracture of her right eye socket. Tr. p. 195. A nurse testified that "blowout" meant there were several fractures of the socket, and comminuted meant the fractures did not fit back together perfectly because some of the bone had been pulverized. L.F. also had multiple bruises on her face, arms, legs, and ribs, and had sharp pain in her right hip.

On March 28, 2006, the State filed additional charges against Fuller, under the pre-existing cause number, for Class B felony criminal confinement, Class A misdemeanor domestic battery, and Class A misdemeanor invasion of privacy in connection with the March 26, 2006 incident.

On July 5, 2006, the State filed an information alleging that Fuller was an habitual offender. On August 23, 2006, the State filed two additional charges of Class C felony stalking, under the same cause number as all of the other charges, without first obtaining leave of the trial court. On October 10, 2006, Fuller filed an objection to the filing of the stalking charges. The trial court refused to dismiss the stalking charges, although it found them to be untimely filed.

After the first phase of the trial held on December 12–13, 2006, a jury found Fuller guilty of Class A felony burglary, Class B felony criminal confinement, Class C felony battery, two counts of Class C felony stalking, Class A misdemeanor domestic battery, and Class A misdemeanor invasion of privacy. Fuller waived a jury trial for the second phase of the trial, after which the trial court found Fuller guilty

of Class D felony domestic battery because of a prior domestic battery conviction, and found that Fuller was an habitual offender. At sentencing on January 11, 2007, the trial court did not impose sentences for every charge for which Fuller had been found guilty. It imposed a sentence of twenty years for Class A felony burglary, fifteen years for Class B felony criminal confinement, and four years for Class C felony stalking, all to run consecutively, and three years for Class D felony domestic battery, to run concurrent with the other sentences, for a term of thirty-nine years. Four years were suspended. The trial court also enhanced the sentence by thirty years because of the habitual offender finding.

*Fuller v. State*, 875 N.E.2d 326, 328-29 (Ind. Ct. App. 2007), *trans. denied*. On appeal, this Court vacated one of Fuller's convictions for Stalking, as a Class C felony. On remand, the trial court entered an amended sentencing order, which ordered Fuller to serve an aggregate term of imprisonment of sixty-five years. Subsequent to this, Fuller began to pursue various forms of post-conviction and federal *habeas corpus* relief. **(App'x at 5-6.)**

[5] On August 13, 2014, Fuller, proceeding *pro se*, filed in the trial court a motion styled, "Motion to Run Sentences Concurrent." In the motion, Fuller requested that the trial court change the sentencing order to run certain of his sentences concurrently with one another, to yield an aggregate term of imprisonment of fifty years. **(App'x at 131-32.)** The trial court denied this motion on September 2, 2014, and reaffirmed its ruling on September 8, 2014. **(App'x at 43, 127.)**

[6] On September 25, 2014, Fuller, again *pro se*, filed a second motion, styled as a "Petition for Modification of Sentence." **(App'x at 36-37.)** Construing this to

be a second petition for sentence modification in a twelve-month period, pursuant to Indiana Code section 35-38-1-17, the trial court dismissed Fuller's petition.

[7] Fuller now appeals.

# Discussion and Decision

[8] Fuller appeals, challenging the trial court's dismissal of his September 25, 2014, petition requesting a sentence modification. The gravamen of Fuller's argument is that his motion seeking concurrent, rather than consecutive sentences, cited and was brought under Indiana Code section 35-50-1-2, and was therefore not a petition for sentence modification under Section 35-38-1-17. The State argues that under a savings clause, codified at Section 1-1-5.5-21, the trial court was precluded from any consideration related to a sentencing modification.

[9] At the time Fuller's motions were filed, Section 35-38-1-17 provided, in relevant part:

> A convicted person may file a petition for sentence modification under this section:
>
> (1) not more than one (1) time in any three hundred sixty-five (365) day period; and
>
> (2) a maximum of two (2) times during any consecutive period of incarceration.

I.C. § 35-38-1-17(h). Fuller acknowledges that his September 25, 2014 petition sought a sentence modification under Section 35-38-1-17, but denies that the August 13, 2014 motion also sought a sentence modification.

[10] Fuller is incorrect. He rests his argument upon statutory citations made in the two requests, and argues that because he cited Section 35-50-1-2 but not Section 35-38-1-17 in the August 13, 2014 motion, that motion was not a request for a sentence modification. Fuller correctly notes that Section 35-50-1-2 provides trial courts with discretion to order consecutive or concurrent sentences. Yet a motion filed after a sentence has been entered, where the motion requests that a court change the terms of a sentencing order, can be nothing other than a request for modification of the sentence.

[11] The citation of different statutes in different motions, upon which Fuller rests his arguments, is of no moment here. As in other matters, we prefer substance over form, and the substance of both the August motion and the September petition is that of a sentence modification. *See In re Sale of Real Property with Delinquent Taxes or Special Assessments*, 822 N.E.2d 1063, 1069 (Ind. Ct. App. 2005), *trans. denied*. This comports with Trial Rule 8(F), which requires that pleadings be construed to do substantial justice, lead to disposition of cases on their merits, and avoid litigation of procedural points.

[12] Both the August motion and the September petition were petitions seeking sentence modifications. These petitions were less than 365 days apart. Under Section 35-38-1-17(h), as enacted at the time of Fuller's petitions, the September

petition was barred from consideration. The trial court did not err when it dismissed the September petition without consideration of its merits.

[13] The State insists that the trial court simply lacked any authority to consider Fuller's petitions because of the operation of the savings clause in Section 1-1-5.5-21. We need not reach that question because, whether as a result of the savings clause or the procedural requirements of Section 35-38-1-17, Fuller's September petition was barred, and Fuller does not appeal the trial court's denial of the August motion on its merits. We note further that the General Assembly enacted Public Law 164-2015, a revision to Section 35-38-1-17 that became effective on May 5, 2015. Whether the revised statute has retroactive implications for Fuller's or any other defendant's sentence modification requests, present or future, is beyond the scope of the instant decision; we note, however, that the revised statute expressly sets aside the operation of the savings clause for purpose of sentence modification requests.

[14] Here, the trial court correctly dismissed Fuller's September petition. We accordingly affirm the trial court's order.

[15] Affirmed.

Riley, J., and Barnes, J., concur.